DANIEL TARANTOLA, Also Known as DONATO TARANTOLA, et al., Plaintiffs, v RONDA WILLIAMS, Defendant, and PETER LEONFORTE, Defendant and Third-Party Plaintiff-Appellant. SHEILA M. NIGL et al., Third-Party Defendants-Respondents.

Second Department, July 14, 1975

*A. Paul Goldblum* for appellant.

*Curtis, Hart & Zaklukiewicz (Edward J. Hart* of counsel), for respondents.

RABIN, J. The issue presented is whether a general release granted by one tort-feasor to another will defeat an otherwise valid right to apportionment of liability.

This controversy arises from an accident involving four automobiles which occurred on the Long Island Expressway, July 11, 1973. Plaintiff Daniel Tarantola was operating an automobile owned by his wife, coplaintiff Rose Tarantola. Peter Leonforte, the defendant here, was operating his own automobile. The third-party-defendants, Michael S. Dios and Sheila M. Nigl, were, respectively, the operator and owner of the third automobile. The fourth automobile was owned and operated by Ronda Williams, who is named as a defendant in the present action, but is not involved in this appeal.

Leonforte commenced an action for personal injuries in the Civil Court of the City of New York, Queens County, against Dios and Nigl. That case was settled; Dios and Nigl, represented by counsel for their insurance carrier, paid $1,250 to Leonforte, who was represented by his personal counsel, and received from him a standard form "general release", dated March 19, 1974. Approximately two months earlier, in January of 1974, the instant action had been commenced in the Supreme Court, Suffolk County, against Leonforte, who was represented by, and answered through, counsel for his insurance carrier. In May of 1974, approximately two months following the granting of the release, counsel for defendant Leonforte sought to implead Dios and Nigl as third-party defendants, claiming they were liable for all or part of any recovery that might be granted against him. The third-party defendants, once again represented by their insurance carrier, then moved to dismiss the third-party complaint on the ground that it was barred by the release previously granted to them by Leonforte. Special Term granted the motion and dismissed the third-party complaint, holding that the impleading of Dios and Nigl for indemnification and contribution pursuant to the doctrine of *Dole v Dow Chem. Co.* (30 NY2d 143) was one of the actions previously released by Leonforte.

The order of Special Term should be reversed and the third-party complaint reinstated. Under the circumstances, the general release cannot fairly be interpreted as releasing the

right to secure either indemnification or an apportionment of liability to the third-party plaintiff under *Dole.*

Of course, a party may release a claim or right, including the right to a Dole apportionment. The question is whether the general release granted by Leonforte in this case may properly be read to include a release of this right. With regard to the interpretation of a general release, "its meaning and coverage necessarily depend, as in the case of contracts generally, upon the controversy being settled and upon the purpose for which the release was actually given. Certainly, a release may not be read to cover matters which the parties did not desire or intend to dispose of" *(Cahill v Regan,* 5 NY2d 292, 299). Both Leonforte and his counsel in the Civil Court action submitted affidavits attesting to the fact that indemnity, contribution and apportionment of liability were not mentioned or discussed in the negotiations leading to the release. According to these affidavits, the amount paid was exclusively in compensation for Leonforte's damages for personal injuries. The third-party defendants do not deny these statements; rather, they rely only on the broad language used in the release, and argue for inclusion as one of the rights released, the right to implead and have damages apportioned.

Of course, the subjective notions of parties to contracts do not determine the legal rights and duties created by a writing of the agreement. The general release granted in the present case should be interpreted to release the claims specifically bargained for and all claims reasonably related to the bargained items. Under the circumstances of this case, however, it is not reasonable to include within the terms of the general release Leonforte's rights to implead Dios and Nigl so as to obtain indemnity or an apportionment of liability. No part of the consideration for the release was related to the extinguishment of this claim. The *Dole* claim was neither bargained for nor discussed. Furthermore, the right to implead under *Dole* is a completely different type of right than the right to damages in compensation for personal injuries and property damage. Although procedurally, the defendant becomes a third-party plaintiff and asserts a claim against the third-party defendant, the right to *Dole* apportionment, at least in the context of interpreting a general release, is more in the nature of a defense to the plaintiff's claim than an affirmative claim against the other tort-feasor. From the point of view of

defendant Leonforte, impleader and apportionment is a device for passing on, and therefore reducing, the full liability asserted against him by the plaintiff. Without attempting an analytically precise categorization of a *Dole* claim for all purposes, it is clear that the rights of indemnification, contribution and apportionment of liability are triggered by the plaintiff's action and, practically speaking, are asserted in a defensive effort to avoid the full consequences of plaintiff's claim. These rights are not affirmative claims against the impleaded tort-feasor; they have no existence independent of the plaintiff's claim, and no action for direct payment accrues to the third-party plaintiff until the time of payment of judgment to the plaintiff. In this respect, they are unlike Leonforte's action for damages against the third-party defendants for his own personal injuries resulting from the accident. The general release granted by Leonforte released all claims reasonably related to that damage claim, whether existing at the time or in the future, but, in the absence of language expressly indicating such a waiver, did not release rights to indemnity, contribution and apportionment of liability (see 2A Weinstein-Korn-Miller, NY Civ Prac, par 1401.21, pp 14–58 to 14–59).

The cases of *Vassar v Jackson* (72 Misc 2d 652, affd 42 AD2d 693) and *Isaacson v Kesten* (45 AD2d 735) do not require a contrary result. Both of these cases involved releases that were executed prior to the decision in *Dole v Dow Chem. Co.* (30 NY2d 143, *supra),* which first allowed apportionment of liability among tort-feasors. While it is true that the parties to pre-*Dole* releases could not possibly have contemplated the release of the then nonexistent rights created by *Dole,* there are policy considerations akin to *res judicata* which apply to positions taken pre-*Dole* which do not apply to actions after the *Dole* decision. While *Vassar* and *Isaacson* both held that the granting of a general release to another tort-feasor would preclude the right to enforce an apportionment of damages under *Dole,* these decisions are distinguishable, since they are based to a significant degree on a legitimate desire to avoid the unhealthy unravelling effects that a new doctrine may have in cases where there have been changes of position prior to the announcement of the new doctrine. (Cf. *Vassar v Jackson, supra,* and *Isaacson v Kesten, supra,* with *Walker v Maeweather,* 76 Misc 2d 671, and *Michelucci v Bennett,* 71 Misc 2d 347.)

GULOTTA, P. J. (concurring). I concur in the result reached by the majority upon the following additional ground:

This case concerns a multiple car accident which occurred on July 11, 1973 on the Long Island Expressway. Peter Leonforte, the owner and operator of one of the automobiles, first commenced an action in the Civil Court of the City of New York, Queens County, against Sheila M. Nigl and Michael S. Dios, the owner and operator, respectively, of one of the other cars, to recover for his personal injuries. He settled that case for $1,250 and executed a general release in the usual form running to Nigl and Dios.

Thereafter, Daniel Tarantola, the operator of another of the vehicles involved in the accident, commenced the present action in the Supreme Court, Suffolk County, naming Leonforte as one of the defendants. Neither Nigl nor Dios was made a party defendant in this action. However, Leonforte interposed a third-party complaint against both of them, claiming a *Dole-Dow*-based right of apportionment and contribution (*Dole v Dow Chem. Co.,* 30 NY2d 143). Nigl and Dios sought to bar the claim by making a motion based upon the general release and it is with the legal sufficiency of that defense that we are concerned on this appeal.

Special Term, relying upon the all embracing language of the general release, which contained no reservation of rights, as well as the decision of this court in *Vassar v Jackson* (42 AD2d 693, affg 72 Misc 2d 652), granted the motion to dismiss the third-party complaint on the law.

It must be conceded that *Vassar* and a later case, *Isaacson v Kesten* (45 AD2d 735), affirming without opinion an unreported decision at Special Term, support the order now under review. In fact, *Vassar and Isaacson* are even somewhat stronger cases, since there the releases, which were executed prior to the *Dole* decision and thus obviously could not have been intended to cover a future *Dole* claim, nevertheless were held to have released such a claim. Therefore, were this a matter solely of determining the effect of a release as between the parties to it, we would have to conclude in line with these cases, a fortiori, that a post-*Dole* release bars a claim for apportionment. However, in neither of these cases was there any issue raised or discussion had of the right of an insurance carrier, as subrogee of a releasor, to pursue its independent remedies against the releasee and of the inability of the

insured to impair that right, which is the main point made by the appellant herein.

The appellant relies on a principle established by the Court of Appeals in *Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co.* (240 NY 37) in 1925, which is of unimpaired validity today. In that case the Wander Company, which was engaged in marketing chemicals and carried its general liability insurance with the plaintiff, Ocean Accident, purchased chemicals from the defendant, Hooker Electrochemical. Due to faulty manufacture, a particular chemical which had been sold to many customers by the Wander Company, became explosive and caused injuries to a great many people. Ocean Accident settled a large number of the claims made against the Wander Company for an aggregate amount of some $40,-000 and, as subrogee to the rights of the Wander Company, sought recovery of that sum from Hooker Electrochemical. In the meantime the Wander Company had itself sued Hooker Electrochemical, but then was forced into bankruptcy. The trustee in bankruptcy was authorized by the court to compromise the claim for a substantial sum of money and to give a release, which he did. It was in form a general release of all claims, but there is some doubt whether on the record the trustee had been authorized to give such a broad release. The Court of Appeals was inclined to the view that it was fairly intended to cover only the claims made in the lawsuit, but went on to state (pp 50–51):

"If we assume the other view of the settlement and release, that they purported to cover all claims originally possessed by the Wander Company and whether embraced in its action or not, we think that such settlement and release did not destroy plaintiff's right to maintain this action. Charged with the knowledge to which we have referred it knew that plaintiff occupied the position of subrogee and by operation of law, working what amounted to an assignment, had acquired a right of action against it which was not controlled by the insured and which the latter had no right to cancel. The insurer was in no way a party to the settlement and we think that the latter was made subject to its rights and without destruction thereof." The knowledge referred to was described as follows (p 46):

"Claiming that the release heretofore described operated to defeat plaintiff's claim for reimbursement founded on subrogation, the motion to dismiss the complaint was made which has

been referred to. On that motion affidavits in answer to those filed by defendant were offered by plaintiff which, in our judgment, permitted the court to find at least as a matter of fact that when defendant made its settlement with the trustee of the Wander Company it knew or possessed information which reasonably pursued would have given it knowledge of plaintiff's status as an insurer of the Wander Company against claims springing from defendant's fault and that it had become subrogated to various claims of such a character against the latter."

The Court of Appeals affirmed an order of the Appellate Division affirming an order which had denied the defendant's motion for judgment dismissing the complaint. The certified question to the Court of Appeals was (p 40): "Is the release given by the trustee in bankruptcy of S. Wander & Sons Chemical Co., Inc., to the defendant herein a bar, as matter of law, to the cause of action set forth in the complaint?" The court gave a negative answer.

In sum then, the right of direct recovery by the insurance carrier was made dependent on resolution of the factual question respecting notice of the insurer's rights. In contrast with the situation existing in *Ocean*, where general liability insurance coverage was optional, we are dealing with compulsory automobile insurance coverage, where imputation of knowledge is virtually inescapable.

There are some other minor distinctions between the instant case and *Ocean Acc.*: in *Ocean Acc.* subrogation had ripened into a vested right by payment, whereas our potential subrogee's monetary responsibility has yet to be determined, although its contractual liability is fixed. Also, ours is a *Dole* claim for apportionment as distinct from a direct claim for damages paid, but, if the latter survived a general release, there is no logical reason to deny a like effect to the former.

The cardinal point in *Ocean Acc.*, in my view, is notice or knowledge of the insurance coverage and not the order in which settlements were made.

A later case, *Hamilton Fire Ins. Co. v Greger* (246 NY 162), is a more clear-cut holding to the same effect, since it involves no uncertainties as to the authority to execute a general release. In that case an assured, defendant Greger, whose car was struck by a railroad train, was paid $2,000 by his carrier, the plaintiff, Hamilton Fire, for destruction of the automobile, under a property damage policy. He then sued the railroad for

his personal injuries and settled the case for $3,000, giving a general release therefor couched in the broadest terms and reading in part as follows (p 165): "from all debts, claims and demands whatsoever and particularly such as have arisen by reason of, or in any manner grow out of but in no wise limiting this release for all damages sustained as a result of an automobile owned and operated by me colliding with a train of the defendant on or about April 1, 1923, at Rochelle Avenue, Rochelle Park, Bergen County, New Jersey, and for which suit was instituted by my attorneys, Messrs. Mackay & Mackay, by summons dated August 20, 1923, in the Bergen County Circuit Court." Hamilton Fire then sued Greger for return of the $2,000, claiming that the release had destroyed its subrogation claim against the railroad. In holding that it had not and in denying summary judgment to Hamilton, the court said (pp 167–168):

"The judgment in the present action in favor of the insurance company against Greger can, therefore, not be sustained upon the theory that Greger has received from the railroad company moneys which equitably belonged to the insurance company.

"It is urged that it may be sustained on the ground that by the release to the railroad company the defendant Greger has destroyed the right of action which the insurance company had against the railroad company. The release has certainly not destroyed the right to recover against the railroad company which the insurance company obtained by subrogation when it paid Greger for the loss sustained by the destruction of the automobile, if the railroad company paid less than the full damages caused by its negligence and obtained the release with knowledge that the insurance company had paid to Greger part of these damages under the insurance policy. (*Fire Association of Philadelphia v Wells,* 84 NJ Eq 484; *Ocean Accident & Guarantee Corporation v Hooker Electrochemical Co., supra.)* There is evidence in this case from which it might be inferred that the railroad company did acquire such knowledge from an examination of Greger held at its instance. There is indeed a question of fact whether in view of all the circumstances, including the form of the complaint and of the release, the parties to the release ever contemplated that the railroad company should be released from any claim already transferred to the insurance company for damages to the automobile."

This doctrine has been reaffirmed as recently as 1967 in *Motor Vehicle Acc. Ind. Corp. v National Grange Mut. Ins. Co.* (19 NY2d 115). In addition, that case indicates that it makes no difference that the subrogee's rights have not crystallized by payment at the time the action or inaction of the assured is claimed to have altered those rights. In holding that a potential subrogee, MVAIC, was not bound by a judgment which the claimant, Bermudez, had allowed to be recovered against him by default, the court said (p 120): "In the earlier declaratory judgment action brought by National against Bermudez and Murray, it is manifest that Bermudez had neither interest nor incentive to contest National's disclaimer for the simple reason that, even if the fact of disclaimer were found, he would still be entitled to proceed against MVAIC under his own policy. Quite obviously, as long as someone compensated him for his injuries, he cared not whether the payment came from National or MVAIC."

A still later case, *Krause v American Guar. & Liab. Ins. Co.* (22 NY2d 147), dealt with the standing of a potential subrogee to make a third-party claim prior to payment. The Special Term granted the motion to dismiss, holding that the insurer's action was premature. The opinion in the Court of Appeals stated (pp 151–152): "It had no standing, the court [Special Term] held, to bring the third-party action because its rights were based on a claim by way of subrogation and those rights accrued only on payment to the insured. On appeal, the Appellate Division, by a closely divided court, reversed, reinstated the third-party complaint and denied the motion for a stay. The majority held that the interpleader statute (CPLR 1007) permits a third-party action based on subrogation even where no payment has been made". The Court of Appeals sustained the Appellate Division view of the matter. While that case involved a procedural question under the impleader statute (CPLR 1007), the court also noted (p 153): "Logically, there is no difference in terms of maturity of an action based on subrogation, as opposed to indemnity, because in either situation the cause of action only accrues upon payment or the determination of liability. Moreover, a subrogee has as strong an interest in protecting its claim over as does an indemnitor."

Therefore, I think it was error to dismiss the third-party complaint as a matter of law. The issue of fact as to whether the moving third-party defendants had notice of, or might

reasonably have acquired knowledge of, the insurance carrier's inchoate rights of subrogation should be decided at the trial. In fact, since there were insurance carriers on both sides of these transactions, it would be hard to conceive of either of them not being aware that subrogation was or would have become involved.

LATHAM and CHRIST, JJ., concur with RABIN, J.; GULOTTA, P. J., concurs in result, with a separate opinion; MARTUSCELLO, J., dissents and votes to affirm.

Order of the Supreme Court, Suffolk County, entered October 15, 1974, reversed, with $20 costs and disbursements, and motion to dismiss the third-party complaint denied. The time to answer the third-party complaint is extended until 20 days after entry of the order to be made hereon.