William J. Burke, J.
This is an appeal by the defendant- *698 appellant, Jimmie L. Stenson, from an order of the City Court of the City of Syracuse (Hon. Joseph Falco).
Briefly stated, the facts indicate that the lower court denied the third-party plaintiffs motion to dismiss the affirmative defense of release interposed by the third-party defendant, Franklin Torrence. The underlying incident, upon which the instant release was given, arose out of a two-car accident involving a motor vehicle driven by Jimmie L. Stenson and one driven by Franklin Torrence and occupied by his son, Timothy Torrence. As a result of certain settlement negotiations entered into prior to the institution of the instant action, the third-party plaintiff Jimmie L. Stenson, executed a release in return for the sum of $1,500 to compensate him for personal injuries he had sustained as a result of the accident. The release stated, in part, that James Stenson, for $1,500 paid by Franklin Torrence: "the receipt whereof is hereby acknowledged, have remised, released, and forever discharged, and by these presents do for myself and my heirs, — remise, release and forever discharge the said Franklin Torrence, his heirs,— from all manner of actions, causes of action, suits — which against Franklin Torrence I ever had, now have, or which I or my heirs — hereafter can, shall, or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the World to the day of the date of these presents”.
The release went on to specifically reserve subrogation rights for any property damage to Mr. Stenson’s insurance carrier.
Subsequent to the giving of this release, Cassie Torrence, mother of Timothy Torrence, instituted the instant suit against Jimmie L. Stenson, and Stenson impleaded Franklin Torrence pursuant to Dole v Dow Chew. Co. and Franklin Torrence in his answer alleged the affirmative defense of release.
The Appellate Division, 4th Dept. in Dury v Dunadee (52 AD2d 206, 208-209) recently stated: "Releases are contracts whose interpretation is governed by principles of contract law (Mangini v McClurg, 24 NY2d 556, 562). 'Where the language of the release is clear, effect must be given to the intent of the parties as indicated by the language employed’ (Matter of Schaeffer, 18 NY2d 314, 317). The releases which arise out of personal injury accidents, however, are subject to highly specialized rules of interpretation (Mangini v McClurg, supra, *699 pp 562-564). We recently stated that in determining what claims or causes of action are covered by a release much depends upon the purpose for which it was executed. 'So if, from the recitals there! i or otherwise, it appears that the release is to be limited . only particular claims, demands, or obligations, the instr » will be operative as to those matters alone, and wr ot release other claims, demands or obligations’ (49 NY mease and Discharge, § 33, p 405). Thus, the general words of release are limited by a recital of a particular claim (Topat Equip. Co. v Porter, 50 AD2d 1098). Plainly a release should not be construed to dispose of matters which parties, themselyes, did not desire or intend. (Cahill v Regan, 5 NY2d 292, 299.).”
In Dury (supra, p 209), the court denied a m'hbr ' r summary judgment m facts similar to the instant case and held: "that Mrs. Dury ! general release of Mr. Dunadee at the conclusion of her negü once action against him for her personal injuries, does not a matter of law bar her k ter claim for contribution from him when she is sued by a passenger in his car. Where there exits ic undisputed factual allegations that the contribution claims der Dole v Dow were neither bargained for nor discussed ijn release negotiations and that the confix, ration paid was exclusively for compensation o\ the releaser’s injuries, the general release executed will not release the right of apportionment (Tarantola v Williams, 48 AD2d 552). Of course, it follows that where such contribution claims are included in release negotiations a contrary result should obtain.” , -
Thus, in interpreting a general release, its meaning aiX.dl cm emige necessarily depend, as in the case of contracts jener ally, upon the controversy being settled and upon the purpose for which the release was actually given. As the court, in Tarantola v Williams, 48 AD2d 552, 554) states: "the right to implead under Dole z a completely different type of right than the right to damages in compensation for personal injuries and property damage. Although procedure y defendant becomes a third-party plaintiff and asserts a claim against the third-party defendant, the right to Dole apportionment, at least in the ct a text of interpreting a general release, is more in the nature o! a defense to the plaintiff’s claim than an affirmative claim against the other tort-feasor.”
The court went on to state (at p 555): "In this respect, they are unlike Leonforte’s action for damages against the third- *700 party defendant for his own personal injuries resulting from the accident. The general release granted by Leonforte released all claims reasonably related to the damage claim, whether existing at the time or in the future, but, in the absence of language expressly indicating such a waiver, did not release rights to indemnity, contribution and apportionment of liability (see 2A Weinstein-Korn-Miller, NY Civ Prac, par 1401.21, pp 14-58 to 14-59)”.
Thus, in light of the above statements of law, this court is of the opinion that under the facts presented to this court, and upon consideration of the language employed in the instant general release, that the lower court yras correct in denying th-ífe ^bird-party plaintiffs motion to dismiss the affirmative defense of release alleged in the thir'd-party defendant’s answer. Thdre appears to have been no Specific reference in the instant release relative to possible Claims, based upon the theory of apportionment, and further*, the record does not disclose, at this time, whether the I parties — although not having specifically mentioned such — intended and bargained for th¿ release of any future apportionment claims. Clearly, therefore, a motion to dismiss the affirmative defense is not in order under the facts presently befor^ this court.
Therefore, it is the opinion of this /court that the lower court decision be affirmed and that this/ case be remanded to the lower court, wherein a full exploration of the facts and! circumstances surrounding the execution of the instant release can be had, in order to ultimately determine whether the alleg/ed defense of release has merit. x \