■ Thelma Blake et al., Respondents, v Joseph Biscardi, Sr., et al., Appellants.—In an action, *inter alia,* to rescind a contract, defendants appeal from a judgment of the Supreme Court, Suffolk County, entered June 14, 1977, which, after a nonjury trial, *inter alia,* (1) directed defendants to reconvey certain properties to the plaintiffs and (2) awarded money damages to the plaintiffs. Judgment reversed, on the law and the facts, and new trial granted, with costs to abide the event. This appeal concerns a contract involving the purchase and sale of real property situated in Brooklyn. Plaintiffs-respondents allege three causes of action in their complaint: (1) fraud in the inception of the contract; (2) that the contract was unreasonable, unconscionable and against the public policy of the State of New York; and (3) that the contract violated their right to the ownership, quiet enjoyment and use and possession of the premises owned by them. Although plaintiffs were successful after a nonjury trial, Trial Term's decision indicates that it misconstrued certain evidence. It is unclear to us how the court arrived at its decision and on what theory it decided to rule in plaintiffs' favor. This action arises from a transaction involving three pieces of property purchased by the plaintiffs, laymen in real estate, from defendant Joseph Biscardi, Sr. (all references to the defendant are to defendant Joseph Biscardi, Sr.), formerly a licensed real estate broker, who has over 40 years of experience in the field. One of the properties was a three-family house on Bainbridge Street, Brooklyn. It was purchased for $21,200 and secured by an FHA mortgage in the amount of $20,000. Plaintiffs bought the property with the aid of an attorney who represented both the buyers and seller, and who had been supplied by the defendant. On April 23, 1968, the day of the closing of the above-described property, plaintiffs signed the contract now in question, which involved two other rent-producing properties located on the same street. The contract provided for a sale price of $132,500 and for monthly payments of $794.41. No down payment was made. The plaintiffs were to receive title to the property from the defendant only after they paid "$25,000.00 of amortization at 6%." In addition, plaintiffs claim that, at the time they signed the contract, defendant asked them for the deeds to three

parcels of property which they owned in Suffolk County as security for the properties which they were purchasing. Plaintiffs were represented by an attorney who had little experience in the real estate field and who had been secured for them by the defendant. They met him at the signing of the contract and never saw him again. He advised them to accept the terms given by the defendant, since it was not unusual to require collateral to secure property bought without a down payment. Plaintiffs gave them the deeds to the parcels of property in Suffolk, one of which included their residence. Over the course of seven years, plaintiffs used the properties, collecting rent from one of them, living in a second and operating a grocery store in the third. They paid defendant approximately $79,000. However, that amount represented only about $24,000 of amortization on the loan. In 1973 defendant asked them to sign a general release as to one of the properties used as collateral, giving them a credit of $6,000 on the contract amount. Plaintiffs apparently were in default at that time and the credit eliminated their past debt. Defendant later sold that property for $8,500. Plaintiffs allege that they continuously asked for an accounting of the amount still needed to release their collateral and secure title to the properties; however, they never received any satisfaction. During that same period, the FHA brought a foreclosure action against the house secured by its mortgage. Moreover, in July, 1975, the FHA conducted an investigation into the real estate practices of defendant concerning other properties sold to plaintiffs. The plaintiffs, along with others, were called to testify and the defendant subsequently lost his real estate license. In the summer of 1975 plaintiffs decided that they had paid the $25,000 and should receive the deeds to the properties. They again asked for an accounting and refused to make any further payments until they received it. Defendant informed them that they were in default and ordered them to vacate all of their properties, including the properties given as collateral. Plaintiffs brought this action to void the contract. On the basis of these facts, the court found fraud in the inception of the contract and unconscionability. It voided the contract and ordered that the properties in Suffolk be returned to plaintiffs; the property in Brooklyn was to be kept by defendant; and the plaintiffs were awarded $8,000 for the Suffolk County property released by them and $10,000 as damages. From the facts adduced at the trial, there was no evidence of fraud. "Fraud, to be actionable, must be based on false representations of existing facts and not of mere opinion (24 NY Jur, Fraud and Deceit, §§ 35, 36)" (*Irving Trust Co. v La Pilar Realty,* 56 AD2d 532). There was no evidence of any material misrepresentation made to the plaintiffs. Although the plaintiffs claim that they did not understand the terms of the contract, they did read the contract before it was signed. There may, however, be evidence that the contract was unconscionable and hence unenforceable. A general rule in contract law is that no matter how hard the bargain, a court will not deprive it of its validity without evidence of fraud or deception. An exception to this general rule has been developed in instances in which a bargain is so one-sided or unreasonable as to be unconscionable under the circumstances existing at the time of the making of the contract. This doctrine has usually been applied in litigation involving poor persons or otherwise disadvantaged victims of sharp practices. The courts are generally not receptive to pleas of unconscionability by one merchant to another. In *Frostifresh Corp. v Reynoso* (52 Misc 2d 26, 27), the court refused to enforce a contract where the Spanish speaking customers had signed an installment contract for a refrigerator, and agreed to pay $1,145.88 for a refrigerator worth $348. The court held that the "Defendants

were handicapped by a lack of knowledge, both as to the commercial situation and the nature and terms of the contract which was submitted in a language foreign to them." The same situation invalidated a contract in *Jones v Star Credit Corp.* (59 Misc 2d 189). The court there stated its concern for the uneducated and often illiterate individuals who are the victims of the gross inequality of bargaining power and the overreaching by merchants who would take advantage of their ignorance. This doctrine has also been codified in both the Uniform Commercial Code and the Real Property Law (Uniform Commercial Code, § 2-302; Real Property Law, § 235-c). The Federal District Court, in *Williams v Walker-Thomas Furniture Co.* (350 F2d 445, 449-450), has defined unconscionability and set forth a test of its applicability: "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. Whether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction. In many cases the meaningfulness of the choice is negated by a gross inequality of bargaining power. The manner in which the contract was entered is also relevant to this consideration. Did each party to the contract, considering his obvious education or lack of it, have a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print and minimized by deceptive sales practices? Ordinarily, one who signs an agreement without full knowledge of its terms might be held to assume the risk that he has entered a one-sided bargain. But when a party of little bargaining power, and hence little real choice, signs a commercially unreasonable contract with little or no knowledge of its terms, it is hardly likely that his consent, or even an objective manifestation of his consent, was ever given to all the terms. In such a case the usual rule that the terms of the agreement are not to be questioned should be abandoned and the court should consider whether the terms of the contract are so unfair that enforcement should be withheld. In determining reasonableness or fairness, the primary concern must be with the terms of the contract considered in light of the circumstances existing when the contract was made. The test is not simple, nor can it be mechanically applied. The terms are to be considered 'in the light of the general commercial background and the commercial needs of the particular trade or case.' Corbin suggests the test as being whether the terms are 'so extreme as to appear unconscionable according to the mores and business practices of the time and place.' 1 Corbin [1 Corbin on Contracts, § 128], *op. cit. supra* Note 2. We think this formulation correctly states the test to be applied in those cases where no meaningful choice was exercised upon entering the contract." No evidence was offered at the trial to show the business acumen of the plaintiffs. Nor is it clear whether they had prior experience with real estate contracts. There are indications of overreaching in that plaintiffs agreed to give defendant deeds to three properties they owned in Suffolk as collateral security, without receiving title to the properties they ostensibly bought in Brooklyn. Moreover, plaintiffs were not represented by attorneys of their choice. In addition, the trial did not establish whether plaintiffs were in default, nor the amount of the default. Thus, there are too many unknown factors and, as a result, this court cannot make a determination on the record before us. It is necessary to have a new trial in order to resolve the issue whether the contract was unconscionable.* Martuscello, J. P., Rabin, Cohalan and Hawkins, JJ., concur.

---

* We note that plaintiffs may bring an action in equity to reform the deeds given to

---

defendant as collateral and to declare them to be mortgages and can use such proceeding as a defense to any eviction proceeding brought against them with respect to those properties since a deed given to secure a debt is a mortgage and the parties to such a transaction are subject only to the rights of mortgagor and mortgagee (see *Mooney v Byrne,* 163 NY 86). Thus defendant does not have absolute title to the properties.