■ RUTH HALPRIN et al., Respondents, v 2 FIFTH AVENUE COMPANY et al., Appellants.—Order of the Supreme Court, New York County, entered July 19, 1979, granting plaintiffs' motion for summary judgment and declaring paragraph 3 of Rider C, annexed to their respective leases, unconscionable and unenforceable, reversed, on the law, and the motion denied, without costs, and judgment is directed to be entered declaring paragraph 3 of Rider C to be a valid and enforceable obligation. The facts are substantially undisputed. Plaintiffs are all rent stabilized tenants in an apartment building owned by defendant 2 Fifth Avenue Company (a partnership) and managed by defendant Rudin Management Co., Inc. Plaintiffs entered into their respective leases and took possession of their apartments subsequent to November 25, 1974 and prior to December 15, 1977. On November 25, 1974 defendants made application to the Conciliation and Appeals Board (CAB) for an 18.38% increase in rents, based on hardship, under the provisions of the Rent Stabilization Law (Administrative Code of the City of New York, § YY51-6.0) and the Rent Stabilization Code adopted pursuant thereto. By order of the CAB dated December 15, 1977, an increase of 14.01% was granted retroactive to January 25, 1975. By stipulation entered into by defendants with some of the tenants, this increase was reduced to 11% to become effective January 1, 1978. Plaintiffs were not tenants at the time the application was made. When they executed their respective leases they were not notified of the pendency of the hardship increase proceeding. However, by the terms of paragraph 3 of Rider C annexed to each of their leases, they agreed to be bound by any increase and to pay it in the manner set forth by the CAB. Paragraph 3 of the lease Rider C provided the tenant with an escape clause in the event of a hardship increase. It permitted him, within 30 days after receipt of a copy of the CAB order, to cancel his lease upon 60 days' written notice to the owner. During this period the tenant canceling his lease would be permitted to remain in possession at no increase in rent. Plaintiffs refused to join in the stipulation executed by the other tenants although they were free to do so. Instead, they brought this action to declare Rider C null and void; to declare it unconscionable and unenforceable against them under section 235-c of the Real Property Law; to recoup the "excess" rent collected from them since January 1, 1978; to recover compensatory and punitive damages in the sum of $100,000 for the fraud alleged to have been practiced upon them in failing to disclose the pendency of the hardship rent increase application; for counsel fees and for damages not otherwise denominated in the sum of $500,000. Following discovery, plaintiffs moved for summary judgment. Special Term granted the motion, holding that the failure of the landlord to notify plaintiffs of the pendency of the hardship rent increase application prior to the execution of the leases entered into by them deprived plaintiffs of any meaningful choice. This, he held, rendered the riders unconscionable and unenforceable. It is clear that, absent some statutory requirement or regulation, a tenant is not

deprived of any constitutional right by an application for a rent increase without notice to him* *(Wasservogel v Meyerowitz,* 300 NY 125; *Bedford Bldg. Co. v Beame,* 38 NY2d 729; *Matter of Johnson v Joy,* 65 AD2d 701). While the doctrine of unconscionability may have application even in the absence of a constitutional violation, there must be a coincidence of two elements to give it viability. On the one hand there must be an absence of meaningful choice; on the other, the terms of the agreement must be unreasonably favorable *(Blake v Biscardi,* 62 AD2d 975). The issue is properly one of law to be determined by the court *(Euclid Ave. Assoc. v City of New York,* 64 AD2d 550), particularly where, as here, the facts upon which the claim is based are fully developed by discovery. Although the choice open to plaintiffs may have been less than desirable, that absence of choice derives from the nature of a controlled market—controls from which tenants generally have benefitted. However, there is here nothing to indicate that Rider C was unreasonably favorable to defendants. It gave them no more than the right to seek relief from the public agency vested with the duty to insure that tenants are not unfairly treated. That the relief was not lightly granted is evidenced by the fact that more than three years passed between application and order. In these circumstances, it cannot be said that paragraph 3 of Rider C is unconscionable. Accordingly, defendants are entitled to a declaration that it is valid and enforceable. Concur—Sullivan, Markewich and Bloom, JJ.

Fein, J. P., dissents in a memorandum as follows: Fein, J. P. (dissenting). The facts are fairly stated in the majority opinion. It is undisputed that at the time the parties entered into the leases in issue the landlord had pending before the Conciliation and Appeals Board (CAB) an application for a rent increase and that the landlord failed to disclose this fact to the plaintiffs. Premised on this failure to disclose and the lack of a "meaningful choice" *(Williams v Walker-Thomas Furniture Co.,* 350 F2d 445, 449-450; *Blake v Biscardi,* 62 AD2d 975, 977), Special Term declared that paragraph 3 of Rider C of the leases is unconscionable, "null and void and without force and effect and unenforceable against the plaintiffs with respect to the order of the New York Conciliation and Appeals Board dated December 15, 1977, during the terms of plaintiffs' leases which were in effect at the time that order was granted". The majority of this court is today declaring that the rider is not unconscionable and is a valid and enforceable obligation because the tenants are afforded a "meaningful choice", in that the rider permits the tenants, within 30 days after receipt of a copy of the CAB order, to cancel their leases upon 60 days' written notice to the owner, during which period the tenants are permitted to remain as tenants with no increase in rent. Thus the court is ruling that the tenants are obligated to pay the rent increase approved by the CAB. I disagree. In my view the issue is merely one of contract interpretation, subject to resolution without reaching the question of unconscionability, even though that is the only

---

\* No such requirement existed in statute or regulation either at the time of the institution of the proceeding before the CAB or at the time of its disposition. However, on June 28, 1979, approximately 18 months after disposition of the CAB proceeding and some four years and seven months after its institution CAB, by resolution, amended its "Information and Instruction Booklet for Comparative Hardship Applications" to include a requirement of notice to those who became tenants after commencement of the proceeding by insertion of certain information into the lease.

issue tendered by the parties. The disputed paragraph 3 of Rider C provides: "That where Landlord has proper cause and ground to apply to the Conciliation and Appeals Board for relief, and where, upon due application, Landlord is found to be entitled to an increase in rent over and above the amount set forth in Par 1 and 2 above, the parties agree: (a) To be bound by the determination of the Conciliation and Appeals Board; (b) That were the Conciliation and Appeals Board has granted an increase in rent, the tenant agrees to pay such increase in the manner set forth by the Conciliation and Appeals Board; (c) Anything contained in this Par. 3(a) and (b) to the contrary notwithstanding, it is distinctly understood and agreed that in the event that an order is issued increasing the stabilization rent because of owner hardship, the tenant may, within thirty (30) days of receipt of a copy of the order by the Conciliation and Appeals Board, cancel his lease on sixty (60) days' written notice to the Owner. During said period, the cancelling tenant may continue in occupancy at no increase in rent." The opening sentence of the rider provision plainly speaks of a future application, not a pending application. It states: "That where the Landlord has proper cause and ground *to apply to the Conciliation and Appeals Board for relief*" (emphasis supplied). It does not say the landlord has applied, although it is undisputed that the rent increase sought and granted was based upon a prior application. It is equally undisputed that plaintiffs were not apprised of the pending application at the time they signed their leases. They understood they might be required to pay an increase premised upon an application to the CAB subsequent to the execution of their leases. This is in accord with the plain meaning of the rider's language. The landlord's undisclosed intention cannot be relied upon to distort the clear language of the rider. If a question of construction is truly raised, the provision must be construed against the landlord who drafted the rider. Nor may the landlord take refuge behind the fact that the terminology was part of the code drafted by the Real Estate Industry Stabilization Association (RSC). It is the responsibility of the court to construe the language as written *(Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285). If the landlord and the association intended to cover pending applications, appropriate language to that end should and could have been included. The language used does not import retroactivity. Thus the issue is not whether the plaintiffs were entitled to notice of an application for a rent increase, as the majority suggests, citing *Wasservogel v Meyerowitz* (300 NY 125); *Bedford Bldg. Co. v Beame* (38 NY2d 729); *Matter of Johnson v Joy* (65 AD2d 701, affd 48 NY2d 689). The issue is rather whether the rider subjected plaintiffs to the consequences of an application made prior to the execution of their leases, of which they had no knowledge. It is not without significance that in each of the cited cases the rent increase application was made after the lease was executed. Moreover, in *Wasservogel (supra),* where the lease contained an escalation clause, it was held to apply only after expiry of the lease and during the period the tenant was in possession as a statutory tenant. The escalation clause was to be strictly construed. Such construction here requires the conclusion that the tenants did not subject themselves to the pending application. The declaratory relief sought by plaintiffs is premised upon allegations that the rider is null and void and unenforceable because it is unconscionable. However, this should not preclude the court from determining and declaring the meaning of the rider without necessarily reaching the question of unconscionability. A declaratory judgment decree should be molded to the necessities of the occasion *(First Nat. Stores v Yellowstone Shopping Center,* 21 NY2d 630, 637). The

clear language of the rider requires a declaration that it does not obligate the tenants to pay the rent increase authorized by the CAB premised upon the November 25, 1974 application to the CAB by the defendants. Accordingly, the order of the Supreme Court, New York County, entered July 19, 1979, should be modified, on the law and the facts, by striking the first decretal paragraph thereof and by substituting the following language therefor: "Ordered that plaintiff's motion for summary judgment is granted only to the extent of declaring that paragraph 3 of Rider C of plaintiffs' leases does not obligate plaintiffs to pay the rent increases authorized by the order of the New York Conciliation and Appeals Board dated December 15, 1977", and otherwise affirmed, without costs. [101 Misc 2d 943.]