**BGW ASSOCIATES, INC., Plaintiff,**

v.

**VALLEY BROADCASTING COMPANY, Defendant.**

**No. 80 Civ. 6013(RWS).**

United States District Court,
S. D. New York.

Oct. 19, 1981.

Moses & Singer, New York City, for plaintiff; David B. Eizenman, David Rabinowitz, New York City, of counsel.

Nitkin, Alkalay, Handler & Robbins, New York City, for defendant; Jon Paul Robbins, New York City, of counsel.

OPINION

SWEET, District Judge.

This is an action for damages for breach of a consulting contract brought by BGW Associates, Inc. ("BGW"), a Connecticut corporation offering consulting services in radio and television, against Valley Broadcasting Co. ("Valley"), a Nevada corporation presently operating television channel 3 in Las Vegas. Valley's claim that the contract was unconscionable and therefore unenforceable has been reserved for the court to decide as the only issue remaining in the case, all other issues having been resolved by the court's dismissal of certain counterclaims and a jury verdict rendered in BGW's favor on October 6, 1981. The following constitutes the findings of fact

and conclusions of law relevant to the defense of unconscionability, upon which I conclude that the contract was not unconscionable.

For five years Valley sought to obtain a license from the Federal Communications Commission ("FCC") to operate Channel 3 in Las Vegas, Nevada. In the spring of 1979 the litigation concerning the prior licensees right to operate channel 3 appeared close to resolution in Valley's favor and Valley became interested in the consulting services of BGW, having filed over (the jargon of the trade) the existing licensee. After preliminary negotiations, Richard Geismar of BGW and James Rogers of Valley agreed in a written contract on March 26, 1979 that BGW would render certain consulting services to Valley for a fee of $25,000 (the "first contract"). During these negotiations BGW also proposed to provide consulting services covering the period after the anticipated grant of the FCC license. Valley, however, rejected that portion of the contract covering post-grant services and only contracted for services during the pre-grant phase covered by the first contract. Pursuant to this first contract BGW performed all services required and Valley paid the $25,000 fee in exchange. On May 9 and 10, 1979, the parties discussed further services to be provided after the expiration of the first contract and Geismar authored a letter agreement which he submitted to Rogers. It provided in pertinent part:

> We are prepared to furnish you with assistance in all facets of constructing, financing, and operating your station. Such services would include advice in the selection of station personnel, the acquisition of station programming, the development of appropriate reporting and recording procedures, and other matters pertaining to the operation of a television station, all in accordance with applicable FCC Rules, Regulations and Policies. In addition, we will assist in locating and securing long-term financing in the amount of $2.5 million, on terms and conditions suitable to you and to the lenders.

The letter agreement also provided for payments of $216,000 plus out-of-pocket expenses, payable in monthly installments over a period of three years and was executed on June 21, 1979 (the "second contract"). Pursuant to the terms of the second contract, both parties performed their respective obligations through August 1980, Valley having paid $72,000 plus expenses, totaling $86,835. On September 10, 1980, Valley terminated the contract in writing, refusing to be bound by its terms.

BGW instituted this action to recover the remaining $144,000 due under the contract, plus $1,060.12 for out-of-pocket expenses incurred. Valley defended its repudiation of the contract claiming that the contract was entered into under duress, that BGW fraudulently induced Valley to sign the contract, that BGW materially breached the terms of the contract and its duty to deal in good faith with Valley, that Valley was entitled to a set-off, and that the contract was unconscionable and further counterclaimed seeking damages for the breaches of the contract. The claim of fraudulent inducement was dismissed by the court at the conclusion of the case in chief, and a jury rendered a special verdict in BGW's favor for $145,060.12.

All parties involved in these transactions are sophisticated and successful business persons although prior to the events of 1979 Valley had no experience in operating a television station. Rogers, president and chief executive officer of Valley, is an experienced and successful attorney in one of the largest law firms in Nevada and formed the group which successfully took over channel 3. Janet Phillips, also an officer of Valley and integrally involved in the negotiations and the operation of the station, is an experienced and successful attorney in Rogers' firm. Geismar is president of BGW and is an experienced and accomplished business consultant.

██ The issue of whether the contract is unconscionable and hence unenforceable is properly before the court to decide as a question of law. *Euclid Ave. Assoc. v. City of New York*, 64 A.D.2d 550, 406 N.Y.S.2d

844, 845 (1st Dept. 1978). *Cf.* U.C.C. § 2–302. A court may refuse to enforce a contract if it finds that the contract was unconscionable at the time the contract was entered into. Unconscionable contracts are characterized by an absence of meaningful choice on the part of one of the contracting parties, together with contract terms unreasonably favorable to the other party. *See generally Blake v. Biscardi*, 62 A.D.2d 975, 403 N.Y.S.2d 544, 546–47 (2d Dept. 1978), *quoting Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449–50 (D.C.Cir. 1965); *Industralease Automated & Scientific Equip. Corp. v. R.M.E. Enterprises*, 58 A.D.2d 482, 396 N.Y.S.2d 427, 431–32 (2d Dept. 1977). In many instances meaningful choice is negated by a gross disparity in the bargaining power of the contracting parties. The court should consider the experience and education of the party claiming the contract to be unconscionable as well as the commercial setting surrounding the transaction. *Blake v. Biscardi*, 403 N.Y.S.2d at 547; *Industralease*, 396 N.Y.S.2d at 431; *Williams v. Walker-Thomas Furn. Co.*, 350 F.2d at 450.

■ Based on the record developed at trial, I find that the contract entered into was not unconscionable. Although at the time the contract was entered into BGW had an advantageous bargaining position because of Valley's inexperience in television operation, the evidence does not indicate that this advantage was so vast as to preclude any meaningful choice by Valley. Indeed, Valley delayed for over a month before executing the contract and had ample opportunity to explore alternatives to BGW. Of course, BGW had already performed a most valuable service, arranging meetings between Valley representatives and lenders, the networks and sales organizations, all of which were important, not only to the primary problem, the grant of the FCC license, but also to the successful operation of the station. The second contract was intended to insure this continued assistance as well as to assist in the hiring of managers and other such services. Valley voluntarily elected to enter into the second contract with full knowledge of its rights and consequences. This is further buttressed by the jury's explicit finding that the contract was not signed under duress.

The second prong of the unconscionability test, requiring that the terms of the contract be unreasonably favorable to BGW, has similarly not been established. Although Valley claims that whatever advice was given during the course of the contract was unreasonably overpriced, it adduced no evidence of what a consultant of BGW's experience and abilities would charge for such services. While over $200,000 for consulting services over a three year period may seem very fulsome to this trier of the fact, the value of services in the television industry appear from common knowledge to be atypical to other industries not involving entertainment and the mass media. In the absence of evidence of industry practice, there can be no finding that BGW's compensation was unreasonably excessive and the unconscionability defense is, therefore, not established. Indeed, due at least in part to the efforts of BGW, Valley obtained the necessary financing, in total over $5 million dollars, the FCC license and network affiliation and now owns a television station estimated to be worth in excess of $12 million. Although this fact alone does not establish a reasonable price for BGW's services, it does indicate that large numbers alone do not establish that BGW's services were overpriced.

Since Valley's affirmative defense of unconscionability has not been established and no other claims remain to be heard, the jury's verdict in favor of plaintiff BGW in the sum of $145,060.12 will be left standing.

IT IS SO ORDERED.