OPINION OF THE COURT
Augustus C. Agate, J.
Plaintiff John Harrington entered into a written agreement with defendant and third-party plaintiff Raja M. Hasan, through third-party defendant Jobar, Inc., a broker, for the sale of plaintiffs taxi medallion. According to the agreement, plaintiff agreed to sell his medallion to defendant and third-party plaintiff for $220,000. Although both parties signed the agreement by August 14, 1998, defendant and third-party plaintiff refused to buy the medallion, and ultimately purchased a different medallion at a lower price. Plaintiff sold his medallion for the amount of $210,000, which was $10,000 less than the price agreed upon by plaintiff and defendant and third-party plaintiff. Plaintiff brought suit against defendant and third-party plaintiff to recover liquidated damages in the amount of $5,000, as indicated in the written agreement, actual damages in the amount of $10,000 for the difference in the purchase price, and $1,000 for broker’s fees plaintiff paid to a new broker after defendant and third-party plaintiff failed to comply with the agreement. Defendant and third-party plaintiff answered plaintiffs summons and complaint, and filed a third-party complaint against third-party defendant Jobar, Inc., for indemnification for any damages levied against defendant and third-party plaintiff should plaintiff succeed at trial.
At trial, plaintiff presented evidence that he entered into an arrangement with third-party defendant Jobar, Inc., to find a purchaser of plaintiffs medallion. Plaintiff further presented the written agreement drafted by third-party defendant and signed by plaintiff and defendant and third-party plaintiff, indicating that defendant and third-party plaintiff would pay plaintiff $220,000 for plaintiffs taxi medallion. Plaintiff stated that after complying with the regulations involved in transferring a taxi medallion, he learned that defendant and third-party plaintiff refused to comply with the agreement. Plaintiff was forced to hire another broker to find another seller, incurring further expense. Plaintiff entered into evidence documents indicating the sale of the medallion to another individual at a price of $210,000.
*619 Defendant and third-party plaintiff testified that although he signed papers he received from third-party defendant Jobar, Inc., he was unaware of their contents and did not read them. He further stated that some of the papers provided by third-party defendant were blank. Significantly, defendant and third-party plaintiff testified that he was unaware of the provisions of the agreement that would hold a breaching party liable for damages. Instead, he testified that an agent of third-party defendant stated that the papers he signed would not bind him to any contract. Defendant and third-party plaintiff stated that he did not comply with the agreement with plaintiff because he was unable to afford the payments necessary to pay for the medallion. Defendant and third-party plaintiff also testified that he later purchased a medallion from another individual for $195,000.
With regard to the issue between plaintiff and defendant and third-party plaintiff, the court finds that there was a contract between plaintiff and defendant and third-party plaintiff, and that defendant and third-party plaintiff breached said contract. It is clear from the evidence that plaintiff intended to sell his taxi medallion and defendant and third-party plaintiff intended to purchase it. It is further evident that both parties agreed for third-party defendant to draft the necessary documents to effect the transaction, and that both parties agreed to a purchase price of $220,000. The written agreement was signed by both parties, thereby binding the parties to the contract.
Defendant and third-party plaintiff failed to demonstrate that he entered into the agreement unknowingly and involuntarily so that the agreement should be voided. A general rule in contract law is that a court should not deprive a contract of its validity without evidence of fraud or deception. (See Blake v Biscardi, 62 AD2d 975, 976 [2d Dept 1978].) Implicit in every contract is a covenant of good faith and fair dealing. (New York Univ. v Continental Ins. Co., 87 NY2d 308, 317 [1995]; cf. Dalton v Educational Testing Serv., 87 NY2d 384 [1995].) Furthermore, parties are responsible for reading and reviewing documents prior to signature, and the failure to do so is not a defense.
Defendant and third-party plaintiff was unable to demonstrate that he lacked knowledge about this business and was unaware of the commitment he made when he signed the agreement. In Blake v Biscardi (62 AD2d at 977) the Court remanded the matter for a new trial because there was evidence that plaintiff had no prior dealings or experience in the *620 real estate business, that plaintiff failed to consult an attorney, and that plaintiff’s actions demonstrated an inequality in bargaining that made the agreement potentially unconscionable. In the present matter, the evidence did not demonstrate any unfairness between the bargaining parties. Rather, defendant and third-party plaintiff admitted that he reneged on the agreement because he believed he could not afford the monthly payments, but later purchased a medallion for $195,000. There was no evidence that he was unfamiliar with the business practices involved in taxi medallion transfers, and the evidence indicated that he waived the opportunity to consult with an attorney. For these reasons, it is clear that defendant and third-party plaintiff knowingly entered into the agreement with plaintiff and understood his obligation. Therefore, defendant and third-party plaintiff breached the agreement, and said breach entitles plaintiff to recover damages.
As to the damages plaintiff should receive, the court finds that plaintiff is only entitled to the actual damages in the amount of $11,000. This issue involves two clauses of the agreement, each which awards a different amount to the complying party as either liquidated damages or actual damages. According to the agreement, should either party fail to complete the agreement, the breaching party must pay the nonbreaching party $5,000 in liquidated damages. However, there is another clause that specifically states, “Should the Buyer refuse to complete the agreement, and the price of the medallion has dropped, he/she shall pay the difference in the price to the seller.”
The case law is clear that a liquidated damages clause will be upheld when the “amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation.” (See Truck Rent-A-Ctr. v Puritan Farms 2nd, 41 NY2d 420, 425 [1977] [emphasis added]; cf. Vernitron Corp. v CF 48 Assoc., 104 AD2d 409 [2d Dept 1984]; National Telecanvass Assoc. v Smith, 98 AD2d 796 [2d Dept 1983].) When the actual loss is easily ascertainable, then the liquidated damages clause will be treated as a penalty and thereby unenforceable. (Cf. Seidlitz v Auerbach, 230 NY 167 [1920]; Mosler Safe Co. v Maiden Lane Safe Deposit Co., 199 NY 479, 485 [1910]; Vernitron Corp., 104 AD2d at 410.)
In the present case, plaintiff’s actual damages is easily ascertainable. Due to defendant and third-party plaintiff’s breach, plaintiff sold the medallion to another individual for *621 $10,000 less than the purchase price agreed upon by plaintiff and defendant and third-party plaintiff. Plaintiff then incurred costs of $1,000 to pay for another broker to find a buyer. Since plaintiff’s damages are ascertainable, plaintiff is entitled to actual damages totaling $11,000.
Since actual damages are ascertainable, the liquidated damages are deemed a penalty to which plaintiff is not entitled. The agreement is clear in its clause that allows for plaintiff to receive the difference in purchase prices should defendant and third-party plaintiff default on the agreement. Based upon the separate clauses in the agreement, the parties did not intend the nonbreaching party to recover both actual damages and liquidated damages. Rather, the parties specified the amount the nonbreaching party would receive in the event of a breach, specifically the difference in the price between the agreement and a future sale. Therefore, based upon the case law and the written agreement, the court orders defendant and third-party plaintiff to pay plaintiff for actual damages in the amount of $11,000.
The court must then address defendant and third-party plaintiffs complaint against third-party defendant. Third-party defendant moved to dismiss defendant and third-party plaintiffs complaint, asserting two claims. First, third-party defendant alleges that the general release signed by both parties to resolve the Small Claims Court matter precluded defendant and third-party plaintiff from relitigating the case and absolved third-party defendant of any further liability. Second, third-party defendant alleges that defendant and third-party plaintiff has no cause of action, because there is no evidence of fraud or deceit on third-party defendant’s part that would negate defendant and third-party plaintiffs knowing and voluntary signing of the documents at issue in this matter. Defendant and third-party plaintiff opposes third-party defendant’s motion, arguing that the Small Claims Court matter only addressed the broker’s fee, and the release entered into between the parties did not prevent defendant and third-party plaintiff from seeking indemnification from third-party defendant in the event of a verdict in plaintiffs favor. Further, defendant and third-party plaintiff argues that third-party defendant intentionally deceived and fraudulently induced defendant and third-party plaintiff to sign the documents, in violation of General Business Law § 349.
It is well settled that a release binds the parties to the instant matter and those reasonably related to it. (See *622 Tarantola v Williams, 48 AD2d 552, 554 [2d Dept 1975].) In interpreting the release, “its meaning and coverage necessarily depend, as in the case of contracts generally, upon the controversy being settled and upon the purpose for which the release was actually given.” (See Matter of Frankel, 292 AD2d 526, 527 [2d Dept 2002] [internal quotation marks omitted], citing Tarantola, 48 AD2d at 554, quoting Cahill v Regan, 5 NY2d 292, 299 [1959].) In this case, there is no evidence that the Small Claims Court case involved anything other than the dispute over the broker’s fee. The summons and complaint directly state that the dispute involves the broker’s fee paid by defendant and third-party plaintiff to third-party defendant. The amount contested in the summons and complaint, $2,000, is the exact amount defendant and third-party plaintiff paid to third-party defendant. The release did not specifically state that it also included any other case or controversy related to the matter. Based upon the evidence, it is apparent that the release was not general, and only specifically released the parties from relitigating the issue of the broker’s fee.
Since the release was specifically related to the broker’s fee, it did not preclude defendant and third-party plaintiff from seeking indemnification from third-party defendant for any adverse ruling in the instant litigation. In Tarantola v Williams (48 AD2d at 555) the Second Department held that the general release by the parties released all claims related to damages, but “in the absence of language expressly indicating such a waiver, did not release rights to indemnity, contribution and apportionment of liability.” (See 2A Weinstein-Korn-Miller, NY Civ Prac 1401.21.) The release in the present matter did not prevent defendant and third-party plaintiff from seeking indemnification because the release only related to the broker’s fee and did not specifically waive defendant and third-party plaintiff’s right to seek indemnification in another matter.
However, defendant and third-party plaintiff has failed to demonstrate any deceit or fraudulent misrepresentation on the part of third-party defendant that would allow defendant and third-party plaintiff to be indemnified. The essential elements of fraud are “representation of a material existing fact, falsity, scienter, deception and injury.” (New York Univ. v Continental Ins. Co., 87 NY2d 308, 318 [1995] [internal quotation marks omitted], citing Channel Master Corp. v Aluminium Ltd. Sales Corp., 4 NY2d 403, 407 [1958].) Defendant and third-party plaintiff alleges that he did not read or understand the documents presented to him by third-party defendant. Defendant *623 and third-party plaintiff further contends that third-party defendant presented blank forms for his signature, and specifically stated that signing these forms would not obligate him in any manner. However, these allegations are insufficient to demonstrate fraud or deceit on third-party defendant’s part to warrant indemnification.
There is no evidence that third-party defendant intentionally misled defendant and third-party plaintiff or that it intended to deceive defendant and third-party plaintiff with regard to the agreement. Defendant and third-party plaintiff sought the help of third-party defendant in purchasing a medallion, which third-party defendant properly arranged. At trial, it became clear that defendant and third-party plaintiff was familiar with the process of purchasing a medallion and, in fact, did subsequently purchase a medallion for a significant amount of money. Defendant and third-party plaintiff, then, cannot claim a lack of knowledge or experience to prove deception upon the part of third-party defendant.
Defendant and third-party plaintiff’s argument that third-party defendant orally assured him that he would not be committed to any contract by signing the agreement is inconsistent with the evidence. It is clear that while defendant and third-party plaintiff claims that third-party defendant orally assured him that his signature would not obligate him, the written agreement specifically stated that if he were to renege on the agreement, he would be indebted to plaintiff by the difference between the payment prices. When, as in the present case, there is a conflict between an express provision of a written contract and a prior alleged oral representation, that conflict negates a claim of reasonable reliance upon the oral representation. (See Stone v Schulz, 231 AD2d 707 [2d Dept 1996].) Here, there is clearly a conflict between the written agreement and defendant and third-party plaintiffs assertion, which refutes any reasonable reliance on the alleged oral assertions. (See Great Atl. & Pac. Tea Co. v Friedman, 289 AD2d 198 [2d Dept 2001].) Whether defendant and third-party plaintiff chose to read the documents or not was his choice, but it was not "the obligation or the fault of third-party defendant that defendant and third-party plaintiff was unaware of the consequences of his decision. Since defendant and third-party plaintiff was unable to demonstrate fraud or deceit on the part of third-party defendant, he has failed to present sufficient evidence to support his claim, and the complaint is thereby dismissed.
*624 For the above reasons, the court finds in favor of plaintiff, and awards plaintiff damages in the amount of $11,000. Accordingly, plaintiffs first cause of action is dismissed, its second cause of action is granted as stated above, and its third cause of action is dismissed as incorporated into its second cause of action. The court further finds that the general release entered into by defendant and third-party plaintiff and third-party defendant did not prevent defendant and third-party plaintiff from seeking indemnification. However, since defendant and third-party plaintiff failed to present sufficient evidence to warrant indemnification by third-party defendant, defendant and third-party plaintiffs complaint is dismissed.