BUSHKIN, GAIMS, GAINES, JONAS & STREAM, Plaintiff,

v.

Sharon GARBER, Gabalis Mfg., Inc., J.B. Hanauer & Co., and Harry Spital, Defendants.

85 Civ. 9287–EW.

United States District Court, S.D. New York.

Jan. 26, 1988.

Bushkin, Gaims, Gaines, Jonas & Stream, pro se.

Jeffrey T. Strauss, New York City, for defendant Sharon Garber.

Stroock & Stroock & Lavan, New York City, for defendant Harry Spital.

OPINION

BRIEANT, Chief Judge.

In dispute in this action is ownership of municipal bonds with a face value of $75,-000. On October 8, 1984, Barry Spitel ordered J.B. Hanauer & Co. ("Hanauer") to purchase the bonds for the account of Harry Spital, Barry Spital's father. The bonds were delivered by Hanauer to the offices of Gabalis Mfg., Inc. ("Gabalis"), of which Barry Spital had been a principal until July, 1984. Barry Spital had withdrawn from that enterprise after Sharon Garber, the president of Gabalis, accused him of diverting company funds and inventory. He sought arbitration and Garber countered with a state court action. In July of 1984, their differences were settled by a settlement agreement and general releases exchanged.

In October, when the bearer bonds purchased for the account of Harry Spital were received at Gabalis, Garber took possession of the bonds and delivered them to her lawyer, a member of the firm of Bushkin, Gaims, Gaines, Jonas & Stream ("Bushkin"). Bushkin then commenced this action to determine the proper owner by impleading four defendants who claimed to be the owners. Bushkin and Hanauer, the brokerage company that sold the bonds, were discharged from liability. The remaining defendants who claim the bonds are Gabalis Mfg., Inc. ("Gabalis") and Harry Spital.

Gabalis contends that it owns the bonds because they were purchased with funds Barry Spital wrongfully diverted from the company. Harry Spital argues that the bonds were bought for his account, paid for by a transfer of other bonds he owned, and mistakenly sent to Gabalis. Barry Spital claims that he managed his father's account, and received mail concerned with the account at his office at Gabalis.

Harry Spital moves for summary judgment in his favor and a declaration that he owns the bonds. He denies that his son used Gabalis funds to purchase the bonds or any personal involvement in such a scheme.

Gabalis argues that the lawsuit with Barry Spital was settled on the basis of an investigation and discovery conducted by her attorneys. It claims that Barry Spital diverted funds from the corporation to himself; that some of these funds were transferred to the account of Harry Spital; and that the corporation was not, and could not have been, aware that the transferred funds were used to buy these bonds for the Harry Spital account. Thus, Gabalis raises the issue of the extent and nature of the general release given to Barry Spital.

■ Harry Spital avers that there can be no genuine dispute that Gabalis previously accused Barry Spital of diverting Gabalis assets, and that the misappropriation issue was settled in the general release given to Barry Spital. The Settlement Agreement states that:

> Garber, Ghia, and Gabalis, jointly and severally, release, extinguish and discharge all claims, demands, causes of action, and rights of accounting any of them may have, whether known or unknown, against Barry Spital ...

The General Release form itself is also broad, although it does not contain the "known or unknown" language. Such a release will not bar relief for an injury unknown at the time of the release if the settlement agreement was not "fairly and knowingly made."[1] New York law does not provide that "relief against mistake because of unknown injuries can be cut off simply by inserting sufficiently broad language in the release."[2] Further, the "ritualistic" language of releases will not bar claims if the the release was the result of fraud or mutual mistake.[3]

■ The affidavit of the president of Gabalis suggests that the particular manipulation that allegedly led to the diversion of funds to Harry Spital was not the subject of the prior controversy. The Spiegel Affidavit, offered by Spital, states that the controversy that precipitated the signing of the release involved a suit by Gabalis alleging that Spital had diverted funds from the company by creating fictitious suppliers and employees. Whether the negotiations of the parties were such that the court can find that the parties intended that this alleged diversion of funds to an account of his father was included in the settlement is a material issue of fact that precludes summary judgment.

■ A second ground for denial of summary judgment is that under New York law, the liability of a joint tort-feasor is not released by a settlement between a plaintiff and another joint tort-feasor.[4] In this case, the release specifically only runs in favor of Barry Spital. While it is true that Harry Spital may not have known of the allegedly illicit diversion of funds, he has not made a showing sufficient to eliminate all issues of material fact as to whether he might be liable as a receiver of corporate funds diverted by his son, for which he gave no consideration.

Summary judgment is denied because material issues of fact exist as to the source of funds for the purchase of the bonds, and also as to whether the diversion of any funds used for the purpose, if any were so diverted, was known at the time of the settlement.

So Ordered.

1. *Farrington v. Harlem Savings Bank,* 280 N.Y. 1, 19 N.E.2d 657 (1939); *Rill v. Darling,* 21 A.D.2d 955, 251 N.Y.S.2d 396, 398 (3d Dept. 1964).

2. *Evans v. S.J. Groves & Sons,* 315 F.2d 335, 340 (2d Cir.1963) (Friendly, J.).

3. *See Mangini v. McClurg,* 24 N.Y.2d 556, 301 N.Y.S.2d 508, 249 N.E.2d 386 (1969).

4. General Obligations Law 15–108(a).