In re CLINTON STREET FOOD CORP., Trenco Food Corp., Grandco Food Corp., Penco Food Corp. and Penco Supermarkets, Inc., Debtors.

Ian Gazes, Chapter 7 Trustee of Penco Food Corp., Plaintiff,

v.

Phillip DelPrete, The Maui Pineapple Co., Inc., Rudy Fuertes, Harry Laufer, Robert Zorn, and Sanford Goldberg, Defendants.

Bankruptcy Nos. 93–B–43200 (SMB1) to 93–B–43204 (SMB1). Adversary No. 98–9294A.

United States Bankruptcy Court, S.D. New York.

March 28, 2000.

Jaffe & Asher, LLP (Mark H. Moore, of Counsel), New York City, for Defendant Robert Zorn.

Paul, Weiss, Rifkind, Wharton & Garrison (Jeffrey D. Saferstein, of Counsel), New York City, for Chapter 7 Trustee.

Gerson, Wood & Blakeman, LLP (Ralph Wood, of Counsel), New York City, for Defendants Philip DelPrete and The Maui Pineapple Co., Inc.

Sanford Goldberg, New York City, Pro Se.

Gersten, Savage & Kaplowitz, LLP (Steven R. Popofsky, of Counsel), New York City, for Defendant Rudy Fuertes.

## MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT

STUART M. BERNSTEIN, Chief Judge.

This adversary proceeding involves claims arising from an allegedly rigged bankruptcy auction. Ian Gazes, the chapter 7 trustee of the above-captioned debtors, seeks to recover damages on behalf of the estate of Penco Food Corporation ("Penco"), contending that the named defendants' secretly colluded to control the sale price of Penco's assets. His claims include fraud, "fraud on the court" and fraudulent concealment.

One of the defendants, Robert Zorn, has moved to dismiss the trustee's amended complaint. Defendants Sanford Goldberg, Rudy Fuertes, Harry Laufer, Philip Del-Prete and The Maui Pineapple Co., Inc. ("Maui") have joined in Zorn's motion, and DelPrete and Maui have also moved for summary judgment. For the reasons discussed below, the motions are granted in part and denied in part.

## BACKGROUND

### A. The Amended Complaint

As this is a motion to dismiss, we must begin with the allegations in the amended complaint which, standing alone, are straightforward. On or about June 17, 1993, Penco and certain affiliated compa-

nies filed separate voluntary petitions for protection under chapter 11 of the Bankruptcy Code. (Amended Complaint, dated Nov. 11, 1999, at ¶ 5.) Judge James L. Garrity, Jr. converted the cases to chapter 7 on October 15, 1993, and the plaintiff was appointed the chapter 7 trustee. (*Id.*)

In or about December of 1993, the trustee entered into a written agreement to sell certain of Penco's assets to the defendant Rudy Fuertes for $300,000.00, subject to higher and better offers. (*Id.*, ¶ 9.) At a January 7, 1994 hearing (the "Sale Hearing"), the trustee sought approval of that sale. (*Id.*, ¶ 11.) Unbeknownst to the trustee, Del Prete, a representative of Maui, had agreed to pay the defendants Fuertes, Laufer and Zorn $50,000.00, $50,000.00 and $70,000.00, respectively, not to bid. (*Id.*, ¶ 13.) The defendant Goldberg participated in these discussions, and was aware of the conspiracy. (*Id.*) The individual defendants failed to disclose the scheme to the trustee, (*id.*, ¶ 14), and also failed to disclose it to the bankruptcy court even though Judge Garrity expressly asked the defendants and their counsel at the Sale Hearing "whether they were aware of the existence of any agreement to control the sale price." [1] (*Id.*, ¶ 15.)

As a result of these undisclosed agreements, Maui bid $320,000.00, no one else bid, and Maui's bid was accepted. (*Id.*, ¶ 17.) In fact, the assets were worth at least $2 million. (*Id.*, ¶ 18.) By order dated March 24, 1994 (the "Sale Order"), Judge Garrity approved the sale to Maui for $320,000.00, (*id.*, ¶ 17), and the Sale Order is final.

### B. The Releases

Several of the parties contend that they have been released from the claims asserted by the trustee. The origin and scope of releases entails consideration of two adversary proceedings otherwise unrelated to the trustee's instant action.

---

**1.** Apparently, the parties never ordered a transcript of the Sale Hearing.

On or about June 22, 1993 (prior to conversion of these cases to chapter 7), the debtors commenced an adversary proceeding against DiGiorgio Corporation, three of its divisions—White Rose Food, White Rose Dairy and White Rose Frozen Food—and W.R. Service Corp. The debtors challenged the validity, priority and extent of their liens on the debtors' assets, and sought $2 million in compensatory and punitive damages as well as subordination of their claims. By stipulation dated May 5, 1995 (the "5/95 Stip."), the trustee and the defendants settled their litigation. As part of that settlement, the trustee gave the defendants the following release:

> The Trustee hereby releases and forever discharges the Defendants of and from any and all actions or causes of action, suits, debts, grievances, claims, complaints, contracts, controversies, agreements, promises, damages, cross-claims, claims for contribution or indemnity, claims for attorneys' fees, judgments, and demands whatsoever, in law or in equity, which against the Defendants the Trustee ever had, now has or shall have, including, but not limited to, any claims under the Bankruptcy Code or any other statute under State Law, or violation of any other local, state or federal law, regulation or ordinance having any bearing whatsoever on Trustee's relationship or obligations to the Defendant which Trustee ever had, now has or shall have. The Parties understand all matters pending between the Trustee and Defendants, and this Stipulation and General Release fully executed on behalf of the Parties, *the Trustee will have complete satisfaction of any and all claims, whether known, suspected, or unknown, that they may have had against Defendants from the beginning of the world ad infinitum. The Trustee hereby waives any and all remedies and relief not explicitly provided for herein.*

(5/95 Stip., ¶ 5)(emphasis added.) "Defendants" are defined in the 5/95 Stip. to include both the named defendants as well as "their predecessors, successors, their current and former assigns, affiliates and their current and former partners, officers, directors, shareholders, employees and agents . . ., in their official, representative and individual capacities." (*Id.*, ¶ 2.) Zorn was (and still is) the Senior Vice President and Chief Financial Officer of White Rose, and hence, appears to be a beneficiary of the release. Judge Garrity "so ordered" the 5/95 Stip. on July 12, 1995, and that order was never appealed, vacated or modified.

In October of 1993, R. Best Produce, Inc. ("R. Best") commenced an adversary proceeding against the debtors to recover amounts allegedly due under the Perishable Agricultural Commodities Act. The trustee settled that litigation in accordance with the terms of a May 1994 stipulation (the "5/94 Stip.") that, among other things, released R. Best, together with its "current and former officers, directors, shareholders, employees and agents . . . in their official, representative and individual capacities" from:

> any and all obligations, claims and demands of any kind whatsoever, at law or in equity, known or unknown, discovered or undiscovered [except as set forth therein].

(5/94 Stip., ¶¶ 4, 9.) By the time of the 5/94 Stip., defendant DelPrete had left Maui and was employed by R. Best. Thus, he appears to be a beneficiary of the release. Judge Garrity "so ordered" the 5/94 Stip. on June 30, 1994, and that order was never appealed, vacated or modified.

## C. This Adversary Proceeding

The resolution of the pending motions also requires consideration of the procedural history of this adversary proceeding. On or about April 17, 1997, the trustee retained Paul, Weiss as his special counsel to bring this adversary proceeding, but it was not commenced until October 5, 1998, or more than one year later. The original complaint contained four causes of action—fraud, "fraud on the court," violation

of § 363(n) of the Bankruptcy Code[2] and fraudulent concealment. It alleged the same wrongdoing as the current amended complaint with some language differences. Each of the defendants either answered the complaint or moved to dismiss it. On January 20, 1999, Judge Garrity conducted a status conference at which the parties agreed that the trustee would disseminate a proposed amended complaint to the defendants in an effort to obtain their consent to the filing of that document. Absent their unanimous consent, the trustee was free to move for leave to amend the complaint, which he ultimately did on February 3, 1999.

The proposed amended complaint contained the same four claims for relief, but added and/or modified certain factual allegations. In a May 17, 1999 decision and a July 9, 1999 order, Judge Garrity granted the trustee leave to amend the complaint, except for claims under § 363(n) of the Bankruptcy Code which were time-barred under Fed.R.Civ.P. 60(b)(3):[3]

> Section 363(n) supplements the general powers of a court to avoid a sale by giving the trustee the right to do so if the sale price is the product of bid rigging. *See Robertson v. Isomedix, Inc.*

---

**2.** Section 363(n) states that:

> The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount. In addition to any recovery under the preceding sentence, the court may grant judgment for punitive damages in favor of the estate and against any such party that entered into such an agreement in willful disregard of this subsection.

11 U.S.C. § 363(n).

**3.** With certain irrelevant exceptions, Fed. R. Bankr.P. 9024 makes Fed.R.Civ.P. 60 applicable herein. Rule 60(b) states in relevant part as follows:

> On motion and upon such terms as are just, the court may relieve a party or a

*(In re International Nutronics, Inc.)*, 28 F.3d 965, 969 (9th Cir.1994) (citing 2 *Collier on Bankruptcy* ¶ 363.14 (15th ed. rev.1998)). Nonetheless, § 363(n) is subject to the rules governing the finality of judgments. Thus, because the Trustee is seeking to avoid the Sale Order by reason of defendants' alleged fraud, we characterize this § 363(n) claim as a motion under Rule 60(b)(3), and apply its one year statute of limitations. *See id.;* 3 *Collier on Bankruptcy* § 363.12 (15th ed. rev'd 1998); 9A Am. Jur.2d Bankr.§ 1636 (1991). The Trustee commenced this action more than one year after the entry of the order approving the Asset Sale. Thus, the Trustee is time-barred pursuant to Rule 60(b)(3) from asserting a claim under § 363(n), and we will not permit him to amend the complaint to assert that claim.

*See Gazes v. Del Prete et al. (In re Clinton Street Food Corp.)*, Nos. 93 B 43200 through 43204(JLG), Adv. Proc. No. 98–9294A (Bankr.S.D.N.Y. May 17, 1999) (unpublished memorandum decision) (the "5/17 Decision") at 21–22.

The trustee moved for reconsideration. Judge Garrity granted reconsideration in

---

> party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court....

Fed.R.Civ.P. 60(b).

part, but adhered to his original decision. Further, he concluded that the trustee's money damage claims under § 363(n) were also time-barred. *See Gazes v. Del Prete et al. (In re Clinton Street Food Corp.)*, Nos. 93 B 43200 through 43204(JLG), Adv. Proc. No. 98–9294A (Bankr.S.D.N.Y. Sept. 14, 1999) (unpublished memorandum decision), at 13–14. Neither decision addressed the remaining claims, and the trustee filed the present amended complaint omitting the time-barred § 363(n) claim, but including the other three.

Defendant Robert Zorn now moves to dismiss part or all of the amended complaint on four grounds. First, the fraud and fraudulent concealment claims are barred by *res judicata*. Second, the trustee has failed to plead the fraud claims with particularity. Third, the "fraud on the court" claim is legally insufficient. Fourth, the release is a complete defense. Defendants Goldberg, Fuertes and Laufer, who did not receive releases, join in the other parts of Zorn's motion. Defendants DelPrete and Maui also join in these parts of Zorn's motion, and separately move for summary judgment based upon the second release discussed above.

### DISCUSSION

The rules that guide a court's consideration of a motion to dismiss under Fed. R.Civ.P. 12(b)(6) are well-settled. The court must assume the facts alleged in the complaint to be true, *Harsco Corp. v. Segui*, 91 F.3d 337, 341 (2d Cir.1996), and draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In addition to the complaint, the court may consider the contents of any documents attached to the complaint or incorporated by reference, matters as to which it can take judicial notice, and documents in the non-moving party's possession or which it knew of or relied on in connection with its claim. *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993). The court may only

dismiss the complaint if it appears beyond doubt that the plaintiff would not be entitled to any type of relief, even if he proved the factual allegations in his complaint. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Harsco Corp. v. Segui*, 91 F.3d at 341; *Cohen v. Koenig*, 25 F.3d 1168, 1171–72 (2d Cir. 1994).

### A. Res Judicata

Zorn's 12(b)(6) motion is premised principally upon the *res judicata* effect of Judge Garrity's order approving the sale. Zorn contends that the trustee's claims for fraud and fraudulent concealment (Counts 1 and 3) are barred by *res judicata* because the order approving the sale is a final judgment, the only vehicle for challenging the order is § 363(n), and Judge Garrity has already held that the trustee's § 363(n) claims are time barred.

The trustee disagrees, arguing that neither the parties nor the issues relating to the Sale Hearing are identical to those raised in his amended complaint. In addition, he maintains that the claims asserted in the amended complaint cannot be precluded because (1) through the defendants' trickery, he was prevented from asserting them at the time of the sale, (2) in the case of all of the defendants except Maui, he is not attacking the purchaser at the sale, and (3) his causes of action relate not to the particular facts and circumstances of the sale itself, but rather, to the defendants' secret collusion.

A bankruptcy court order approving a sale of assets is a final order for *res judicata* purposes. *See Balaber–Strauss v. Markowitz (In re Frankel)*, 191 B.R. 564, 570 (Bankr.S.D.N.Y.1995); *accord Starns v. H.E. Avent*, 96 B.R. 620, 627 (M.D.La.1989), *aff'd sub nom. Hendrick v. Avent*, 891 F.2d 583 (5th Cir.), *cert. denied*, 498 U.S. 819, 111 S.Ct. 64, 112 L.Ed.2d 39 (1990); *Third Nat'l Bank v. Fischer (In re Fischer)*, 184 B.R. 293, 301 (Bankr.M.D.Tenn.1995). This rule promotes the important public policy favoring

the finality of orders transferring ownership of bankruptcy estate assets. *See Kabro Assocs. v. Colony Hill Assocs. (In re Colony Hill Assocs.),* 111 F.3d 269, 272 (2d Cir.1997); *Gekas v. Pipin (In re Met–L–Wood Corp.),* 861 F.2d 1012, 1017 (7th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989); *see also* 11 U.S.C. § 363(m) (providing that the reversal or modification on appeal of an order approving sale does not affect the validity of the sale to an entity that purchased in good faith unless the order was stayed pending appeal). Further, because a § 363 proceeding is *in rem,* it is final as to the entire world, including those who were not parties to the sale. *In re Met–L–Wood Corp.,* 861 F.2d at 1017.

■ Section 363(n) is a statutory exception to the rule of finality of bankruptcy sale orders. *See Robertson v. Isomedix, Inc. (In re International Nutronics, Inc.),* 28 F.3d 965, 968 (9th Cir.), *cert. denied,* 513 U.S. 1016, 115 S.Ct. 577, 130 L.Ed.2d 493 (1994); *Gumport v. China Int'l Trust and Investment Corp. (In re Intermagnetics America, Inc.),* 926 F.2d 912, 917 (9th Cir.1991). It allows the trustee either to avoid a collusive sale or recover damages (including punitive damages) from any entity who enters into a collusive agreement. *See* 11 U.S.C. § 363(n). The statute does not state how long after the sale a claim may be asserted. Judge Garrity answered that question, however, when he ruled that any equitable or legal claims relating to the bid rigging under § 363(n) were barred by the one-year period of limitations established under Fed.R.Civ.P. 60(b)(3). That ruling is law of the case, and will not be revisited.

The motions to dismiss ask me to extend this conclusion to the fraud and fraudulent concealment claims. Judge Garrity did not rule on these claims, and moreover, he granted leave to assert them. This implies a ruling that they are not time-barred. I am reluctant, however, to adopt this view.

The parties and the court focused exclusively on the § 363(n) claim. Further, Judge Garrity's decisions do not expressly address the relationship between the § 363(n) claims and the other claims asserted in the complaint and proposed amended complaint, and more particularly, the period of limitations governing these claims. Moreover, having now considered the fraudulent concealment and fraud claims (Counts 1 and 3), I conclude that they too are barred by *res judicata,* and are subject to the same one year period of limitations.

The common law claims that the defendants now seek to dismiss are indistinguishable from § 363(n) claim that Judge Garrity already dismissed as time-barred. Although they may enjoy distinct elements, *see Lone Star Industries, Inc. v. Compania Naviera Perez Companc, S.A.C.F.I.M.F.A. (In re New York Trap Rock Corp.),* 42 F.3d 747, 751–55 (2d Cir.1994)(separately analyzing § 363(n) and fraudulent concealment claims) they are not distinct for *res judicata* purposes; all of the claims depend on the bid rigging scheme and the issuance of the Sale Order, and seek damages based upon the improper procurement of the Sale Order. More important, the trustee could have raised these claims to defeat Maui's bid and acquisition of the Penco assets. *See In re Int'l. Nutronics, Inc.,* 28 F.3d at 970–71 (*res judicata* effect of sale order bars antitrust claims that infringe the same rights as the collusive bidding, and could have been asserted at the sale hearing); *In re Met–L–Wood Corp.,* 861 F.2d at 1016 (*res judicata* effect of sale order bars related RICO claim). If a party could transform a § 363(n) damage claim into a common law claim and avoid the one year period of limitations, § 363(n) would become meaningless.[4] *See id.* at 1017 (the trustee's damage claim is a "thinly disguised collateral attack on the judgment confirming the sale," and "may be done only by the route

***

4. *New York Trap Rock* did not concern, as the trustee implies, the period of limitations governing a fraudulent concealment claim arising in connection with a collusive sale.

provided for collateral attacks on judgments").

The trustee nevertheless seeks to escape the preclusive effect of *res judicata,* arguing that his common law claims did not exist, or were unknown, at the time of the sale. These contentions are either wrong or disingenuous, or both. All of the wrongful conduct alleged in the amended complaint occurred prior to the entry of the Sale Order which itself is an essential element of every claim. Thus, the trustee's claims arose no later than the entry of the Sale Order. Further, the trustee has not pointed to any authority suggesting that ignorance of the claims tolls the period of limitations under Fed.R.Civ.P. 60(b)(3).[5] To the contrary, the one year period is an absolute, outside limit, and a court lacks the power to grant motions filed beyond that time. 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 60.65[2][a], at 60–200 (3d ed.1999).

■ Even if ignorance tolls the one year period, the trustee's claims are still time-barred. The trustee retained Paul, Weiss, his special counsel, to prosecute these claims, and then waited more than a year to commence this adversary proceeding. He obviously knew he had a claim when he hired Paul, Weiss. If the sale had occurred on that date, the trustee's claims would be time-barred. Since the claims arose long before then, *a fortiori,* they are time-barred.[6]

## B. Fraud on the Court

■ The trustee's second claim asserts "fraud on the court." "Fraud on the court" encompasses conduct which represents an attempt to defile the court itself, or a fraud perpetrated by officers of the court so that the judicial machinery cannot perform its impartial task of judging cases. *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1325 (2d Cir.1995); *Transaero, Inc. v. La Fuerza Area Boliviana,* 24 F.3d 457, 460 (2d Cir.1994), *cert. denied,* 520 U.S. 1240, 117 S.Ct. 1843, 137 L.Ed.2d 1047 (1997); *Gleason v. Jandrucko,* 860 F.2d 556, 558 (2d Cir.1988); *Kupferman v. Consolidated Research & Mfg. Corp.,* 459 F.2d 1072, 1078 (2d Cir.1972). It involves conduct that "seriously affects the integrity of the normal process of adjudication," *Gleason,* 860 F.2d at 559, and an independent action seeking relief from a judgment on that basis is available " 'only to prevent a grave miscarriage of justice.' " *Lehman Brothers, Inc. v. Maselli,* No. 93 Civ. 4478, 1998 WL 531831, *6 (S.D.N.Y. Aug. 24, 1998) (quoting *United States v. Beggerly,* 524 U.S. 38, 47, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998)).

■ "Fraud on the court" is not necessarily limited to situations where the court or an officer of the court subverts the judicial process through fraudulent conduct. The actions of a litigant may qualify as well, although it is not clear whether an officer of the court must also be involved. *See Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238, 245, 64 S.Ct. 997, 88 L.Ed. 1250 (1944) (where applicant for patent procured publication in trade journal of article prepared by applicant's attorney but signed by an ostensibly disinterested expert lauding applicant's alleged invention and then used article to procure both a patent from a patent office and a judgment by Circuit Court of Appeals upholding such patent, fraud was conclusively established); *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1118 (1st Cir.1989) (service station operator's conduct in fabricating

---

**5.** The trustee's papers cite *International Nutronics* and *Met–L–Wood,* but neither supports this argument. The former stands for the proposition that a sale order can bar a non-core antitrust claim that could have been asserted at the sale hearing. 28 F.3d at 969–70. In the latter case, the court ruled that the sale order was good against the entire world, 861 F.2d at 1017, and after the time to appeal runs, the sale order is final, "even against nonparties to the sale proceeding." *Id.* at 1018.

**6.** In light of this conclusion, I need not consider Zorn's argument that the trustee failed to plead fraud with particularity.

purchase agreement and in allowing his counsel to annex bogus agreement to complaint seeking to force franchisor to accept his operation of station constituted "fraud on the court" warranting dismissal of action); *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 986 (4th Cir. 1987) (fraud on court may exist where witness and attorney conspire to present perjured testimony); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir.1978) (same, where party, with counsel's collusion, fabricates evidence); *Tri–Cran, Inc. v. Fallon (In re Tri–Cran, Inc.)*, 98 B.R. 609, 617 (Bankr.D.Mass.1989) ("a cause of action for fraud on the court can be maintained against one who is not an officer of the court and in whose favor judgment was granted if that person colluded with an officer of the court to perpetrate fraud on the court and thereby obtained the favorable judgment"); *see also Intermagnetics*, 926 F.2d at 916 ("fraud upon the court includes both attempts to subvert the integrity of the court and fraud by an officer of the court").

*Leber–Krebs, Inc. v. Capitol Records*, 779 F.2d 895 (2d Cir.1985), is instructive. There, the plaintiff sued a third party, and obtained an *ex parte* order of attachment. It served the order on the defendant, and moved to confirm it four days later. The defendant submitted a garnishee's statement attesting that it did not hold any property of the third party and was not indebted to him; as a result of the statement, the court denied the motion to confirm the order of attachment. *Id.* at 896–97. The garnishee's statement, however, was false. The defendant owed a substantial contract debt to the third party which it subsequently paid over to the latter before the plaintiff could obtain a second order of attachment. *Id.* at 897.

The plaintiff then commenced an action against the defendant alleging, *inter alia,* that the filing of the false garnishee's statement constituted a "fraud on the court." In ruling on the adequacy of the claim, the Court of Appeals alluded to counsel's participation in the filing of the false statement, *see id.* at 898, but counsel's role does not appear to be part of the holding. Instead, the court upheld the sufficiency of the claim based on (1) the defendant's misrepresentation to the court, (2) the denial of the motion to confirm based on the misrepresentation, (3) the lack of an opportunity to discover the misrepresentation and either bring it to the court's attention or bring a timely turnover proceeding against the garnishee, and (4) the benefit the defendant derived by inducing the erroneous decision. *Id.* at 899–900.

The trustee's "fraud on the court" claim satisfies these requirements. According to the amended complaint, the defendants lied when the bankruptcy court inquired about any bidding agreements, the lie contributed to the acceptance of Maui's bid and the approval of the Sale Order, the trustee lacked the opportunity to discover the fraud in light of the summary nature of the sale proceeding and the relatively short time frame (only three weeks between the filing of the sale application and the auction), and the defendants benefitted. Maui, through the deceitful conduct of its agent DelPrete, bought $2 million worth of property for $320,000.00, and Fuertes, Laufer and Zorn were paid off. It is not altogether clear what Goldberg got out of the collusive scheme, but the amended complaint alleges that he knew about the collusive scheme and that the defendants (which includes Goldberg) covered it up and lied to the court. If true, Goldberg would be a co-conspirator or aider and abettor of the fraud, and presumably, liable on that basis. Accordingly, the amended complaint states a legally cognizable claim for "fraud on the court." [7]

---

7. To the extent that counsel's participation is an element of the claim, the amended complaint alleges that the defendants and/or their counsel concealed the existence of their illicit scheme from Judge Garrity. (Amended Complaint, ¶¶ 15, 26.)

## C. Effect of the Releases

 Zorn, DelPrete and Maui also request dismissal based on the general releases described above. The usual rules governing the interpretation of contracts under New York law [8] also apply to general releases. *Mangini v. McClurg*, 24 N.Y.2d 556, 301 N.Y.S.2d 508, 249 N.E.2d 386, 389 (1969). "The courts must look to the language of the release—the words used by the parties—to determine their intent, resorting to extrinsic evidence only when the court concludes as a matter of law that the contract is ambiguous." *Wells v. Shearson Lehman/American Express, Inc.*, 72 N.Y.2d 11, 530 N.Y.S.2d 517, 526 N.E.2d 8, 12 (1988); *accord K & S Co. v. Sexton Investment Co., L.P.*, No. 96 Civ. 8741(JGK), 1999 WL 92284, *6 (S.D.N.Y. Feb. 18, 1999). Nevertheless, the interpretation of a release and the limitations on parole evidence are often subject to special rules in light of the nature of releases. *See Mangini v. McClurg*, 301 N.Y.S.2d 508, 249 N.E.2d at 389–90. Thus, the meaning and coverage of a general release hinges on the controversy being settled and the purpose for which the release is actually given. In the end, the scope of the release depends on the intention of the parties, and should not be interpreted to cover claims the parties did not intend to cover. *See Cahill v. Regan*, 5 N.Y.2d 292, 184 N.Y.S.2d 348, 157 N.E.2d 505, 510 (1959)(Fuld, J.); *Long Island Pipe Fabrication & Supply Corp. v. S & S Fire Suppression Sys., Inc.*, 226 A.D.2d 1136, 641 N.Y.S.2d 477, 478 (N.Y.App.Div. 1996); *Enock v. National Westminster Bankcorp*, 226 A.D.2d 235, 641 N.Y.S.2d 27, 28 (N.Y.App.Div.1996); *Lefrak SBN Assocs. v. Kennedy Galleries, Inc.*, 203 A.D.2d 256, 609 N.Y.S.2d 651, 652 (N.Y.App.Div.1994). Even the most broadly drawn general release cannot necessarily be taken at face value. *See Bush-kin, Gaims, Gaines, Jonas & Stream v. Garber*, 677 F.Supp. 774, 776 (S.D.N.Y. 1988) (general release will not bar relief for injury unknown at time of release if settlement agreement was not fairly and knowingly made).

### 1. The Zorn Release

 Zorn has moved to dismiss pursuant to Rule 12(b)(6), relying on the general release contained in the 5/95 Stip. Given the procedural posture, the relevant inquiry is whether each party has advanced a reasonable interpretation of the scope of the release, rendering it ambiguous under ordinary principles of contract interpretation. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir.1996); *Sayers v. Rochester Tel. Corp. Supplemental Management Pension Plan*, 7 F.3d 1091, 1095 (2d Cir.1993); *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.1992); *Walk–In Med. Ctrs., Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir.1987).

 Concededly, the language of the release, quoted above, is quite broad, and looks like it should embrace the trustee's claims against Zorn. Further, the final WHEREAS clause in the stipulation indicates the intention to enter into a global release of all claims, not just the claims asserted in the pending lawsuit. If the principals (*i.e.*, the trustee and DiGiorgio/White Rose) intended a global release, it would be reasonable to also release groups like officers, employees and agents who, if sued by the trustee, might assert indemnity claims against their principal.

Nevertheless, other factors weigh against upholding Zorn's interpretation of the release, at least as a matter of law. The general release was given in the context of the settlement of a specific and entirely unrelated action, and the burden

---

**8.** The scope and effect of the release are controlled by state law. *Barrett v. United States*, 622 F.Supp. 574, 582 n. 5 (S.D.N.Y.1985) (citing *Rushford v. United States*, 204 F.2d 831, 832 (2d Cir.1953) ), *aff'd*, 798 F.2d 565 (2d Cir.1986). Since all of the events in question took place in New York, New York law governs the construction and effectiveness of the release. *See id.*

is on Zorn to establish that it was intended to discharge the claims in this action. *See Structural Processing Corp. v. Farboil Co.,* 234 A.D.2d 284, 650 N.Y.S.2d 769, 770 (1996). Nothing in the stipulation or the record of the earlier lawsuit focuses on the specific issues in this litigation, and hence, there is nothing for Zorn to point to on this motion. This is not surprising. The pending claims were unknown to the trustee, and hence, not the subject of a dispute at the time, making it less likely that they are covered by the release. *Enock v. National Westminster Bankcorp,* 641 N.Y.S.2d at 28 (general release did not bar undisputed claim); *Simon v. Simon,* 84 N.Y.S.2d 307, 274 A.D. 447, 449 (1948)(same). In addition, it does not appear that the parties bargained over the auction claims, or that the estate received any additional consideration for releasing such potentially valuable claims. *See Tarantola v. Williams,* 48 A.D.2d 552, 371 N.Y.S.2d 136, 140 (1975); 19A N.Y. JUR. 2D, *Compromise, Accord & Release* § 85, at 174 (1999).

Finally, Zorn is not a named releasee. Instead, he is a member of a group (DiGiorgio/White Rose's "employees and agents ... in their official, representative and individual capacities") that was released by the trustee's law firm, the trustee and his "agents and employees." While Zorn does not have to be named specifically, *see Wells v. Shearson Lehman/American Express, Inc.,* 530 N.Y.S.2d 517, 526 N.E.2d at 12, a court should be wary of reading a general release to encompass wholly unrelated claims involving unnamed persons that may not have been within the contemplation of the principals that negotiated it. Indeed, the release in this case is so broad that it cannot possibly mean what the language appears to convey. Under Zorn's reading, the release would discharge a personal injury claim arising from an automobile accident caused when an individual, who also happens to be an employee of White Rose, drove a car that struck the trustee's secretary.[9] Similarly, it would discharge a food poisoning claim. Despite the broad language, no one would seriously argue that the release encompassed such claims.

The ability to hypothesize excluded claims nevertheless falling within the literal terms of the release buttresses the conclusion that the release is ambiguous. Both parties have offered reasonable interpretations regarding the scope of the release, and these interpretations cannot be resolved on a motion to dismiss. Accordingly, Zorn's motion to dismiss based upon the release is denied.

## 2. The DelPrete Release

■ DelPrete and Maui have moved for summary judgment in reliance on the release contained in the 5/94 Stip. Thus, DelPrete and Maui have the initial burden of demonstrating that the release is unambiguous, and extends to the claims asserted in this litigation. If they meet this burden, the burden then shifts to the trustee to show a material issue of fact regarding its scope.

■ Here, the release suffers from the same ambiguities as the DiGiorgio/White Rose release.[10] In addition, the stipulation of settlement focuses entirely on the dispute at issue, and there is no recitation pointing to a global resolution. Further, DelPrete's connection to the R. Best release is more attenuated. The allegations against DelPrete concern acts committed while in the employ of Maui, and R. Best would not have any business reason to seek a release for those acts.

DelPrete's submissions on this motion do not resolve these ambiguities, and in

---

9. I do not suggest that the trustee would be empowered to give such a release, but only that Zorn's interpretation of the broad language of the release would support what is so obviously an unintended result.

10. Nothing in the language of the release or the circumstances surrounding its execution indicates an intent to release Maui.

fact, support the trustee's argument that the parties did not intend to release the estate's claims against DelPrete. Del-Prete's mother, Mary DelPrete, is the president and majority stockholder in R. Best. (*Declaration of Mary DelPrete in Support of Philip DelPrete's Motion for Summary Judgment,* dated Jan. 6, 2000, at ¶ 1.) If the parties had intended to discharge the trustee's claims, it would have been simple enough for her to say so in the supporting declaration submitted on the current summary judgment motion. Instead, she stated that she was not aware of any claims between the estate and the releasees, and didn't ask for the broad release ultimately included in the 5/94 Stip. (*Id.* at ¶ 5.) In short, the auction claims were unknown, and their discharge was not contemplated by the parties.

Under the circumstances, I conclude at this stage that the releases do not bar the claims against Zorn, DelPrete and Maui. Thus, I do not have to decide whether fraud vitiates the releases, as the trustee argues. I note, however, that the trustee's fraud claim seems unsupportable. Assuming that Zorn and DelPrete were under a continuing duty to disclose their fraudulent conduct, the trustee did not negotiate the releases with either of them. They are members of groups that received the benefit of releases negotiated by others. In this regard, the trustee does not suggest that the parties with whom he did negotiate were guilty of any concealment or wrongdoing. Under the circumstances, it appears unlikely that he will be able to prevail on this theory.

### RECAPITULATION

Counts 1 and 3 of the Amended Complaint are dismissed as to all defendants. The motions to dismiss or for summary judgment are denied in all other respects.

Settle order on notice.