**In re CHC INDUSTRIES, INC., f/k/a Cleaners Hanger Company, Debtor.**

**Michael Bronson, an individual, C.E.K., Inc., a Florida corporation, and MBC, LLC, a Florida limited liability company, Plaintiffs,**

**v.**

**CHC Industries, Inc., f/k/a Cleaners Hanger Company, Defendant.**

**Bankruptcy No. 8:03–bk–20775–PMG.**
**Adversary No. 8:07–ap–112–PMG.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Dec. 21, 2007.

768

Michael P. Brundage, Hill Ward & Henderson, PA, Tampa, FL, for Plaintiffs.

Russell M. Blain, Scott A. Stichter, Stichter, Riedel, Blain & Prosser, Tampa, FL, for Defendant.

## ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

PAUL M. GLENN, Chief Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider the Motion for Summary Judgment filed by the Plaintiffs, Michael Bronson, CEK, Inc., and MBC, LLC.

The Plaintiffs commenced this action by filing a Complaint for Declaratory Relief against the Debtor, CHC Industries, Inc. In the Complaint, the Plaintiffs contend that an Order Granting Debtor's Motion for Authority to Sell Real and Personal Property Free and Clear of Liens to C.E.K., Inc., entered in this Chapter 11 case on December 19, 2003, precludes the Debtor from asserting certain fraud and negligent misrepresentation claims against the Plaintiffs in a state court action currently pending in Pinellas County, Florida.

The Plaintiffs contend that there are no genuine issues as to any material fact, and that they are entitled to a judgment in their favor as a matter of law.

### Background

The Debtor filed its petition under Chapter 11 of the Bankruptcy Code on October 6, 2003.

On its Schedule of Assets, the Debtor listed certain commercial real property located in Palm Harbor, Florida (the Property). (Doc. 83). The Property had been used as the Debtor's corporate office.

On November 12, 2003, the Debtor filed a Motion for Authority to Sell Real and Personal Property Free and Clear of Liens to C.E.K., Inc. (the Sale Motion) (Doc. 139). In the Sale Motion, the Debtor sought permission to sell the Property to C.E.K., Inc. for the sum of $1,650,000.00. A copy of the Commercial Contract between the Debtor and C.E.K., Inc. was attached to the Sale Motion. Ac-

cording to its terms, the Contract was assignable by the buyer.

On November 20, 2003, the Court issued a Notice of Preliminary Hearing with respect to the Sale Motion. (Doc. 152).

In accordance with the Notice, a hearing was conducted on the Debtor's Sale Motion on December 15, 2003. The Debtor, as seller, and C.E.K., Inc. as the buyer, were represented at the hearing.

On December 19, 2003, the Court entered an Order Granting Debtor's Motion for Authority to Sell Real and Personal Property Free and Clear of Liens to C.E.K., Inc. (the Sale Order). (Doc. 200). Pursuant to the Sale Order, the Debtor was authorized to sell the Property to C.E.K., Inc. in accordance with the terms of the Contract. The Sale Order also provided in part:

> The Court finds that due and proper notice has been given to all interested parties and that approval of this sale is in the best interest of the bankruptcy estate because the price to be paid by the Purchaser, $1,650,000.00, is the highest and best offer received by the Debtor after reasonable measures have been undertaken to locate interested buyers.

. . .

> 4. The Court finds that the Debtor and the Purchase[r] have acted in good faith, the terms and conditions of the Agreement are fair and reasonable and have been negotiated and agreed upon in good faith on the part of the Debtor and the Purchaser, that the Purchaser does not have any affiliation with the Debtor or its officers, directors or affiliates, and the Purchaser is an arm's length purchaser who is purchasing the Purchased Assets in good faith within the meaning of § 363(m) of the Bankruptcy Code. Therefore, all protections afforded under 11 U.S.C. § 363(m) and related case law shall apply to this sale.

(Doc. 200, pp. 2–4). The Court also retained jurisdiction to interpret and enforce the provisions of the Sale Order. (Doc. 200, ¶ 5).

The sale closed on December 30, 2003, and MBC, LLC, as assignee of C.E.K., Inc., purchased the Property for the sum of $1,650,000.00. (Adv.Doc.16, p. 8).

In 2005, the Debtor filed an action in the Circuit Court for Pinellas County, Florida, against Realtec Group, Inc. d/b/a Re/Max Realtec Group, Joseph Yasso, Jim Highberger, and Mark Ganier (the Brokers). According to the Debtor, the Brokers were real estate brokers that the Debtor had employed in connection with the sale of the Property. In the State Court action, the Debtor asserted causes of action against the Brokers for breach of contract, negligence, breach of fiduciary duty, negligent misrepresentation, fraud, breach of statutory duties, and promissory estoppel. Generally, the Debtor alleged that certain improper conduct of the Brokers had caused the Debtor to receive less than maximum value for the Property.

In January of 2007, the Debtor filed a Motion for Leave to File Third Amended Complaint in the State Court action. (Adv. Doc. 7, Exhibit C). In the Motion, the Debtor contends that it had obtained information during the case that provided a "good faith basis for asserting claims against the buyer of the real property, C.E.K., Inc.; C.E.K.'s assignee, MBC LLC; and C.E.K.'s and MBC's controlling principal, Michael Bronson." (Adv. Doc. 7, Exhibit C, ¶ 4). The proposed Third Amended Complaint, as attached to the Motion, contains a Count against C.E.K., Inc., MBC LLC, and Michael Bronson for negligent misrepresentation, and a Count against Bronson for fraud.

The State Court subsequently entered an Order staying the proceedings in that Court to allow the Plaintiffs to obtain a determination from this Court "as to whether the Bankruptcy Court's Order Granting Debtor's Motion for Authority to Sell Real and Personal Property Free and Clear of Liens to CEK, Inc., entered December 19, 2003 bars or impacts any of the claims raised in this case." (Adv. Doc. 1, Exhibit C).

In this case, therefore, the Plaintiffs seek a declaratory judgment that the claims asserted against them by the Debtor in the State Court action are barred by the terms of the Sale Order entered in the Chapter 11 case. They contend that the Sale Order is a final Order of this Court that is entitled to preclusive effect under the principles of res judicata and collateral estoppel. According to the Plaintiffs, the State Court claims arise from the same operative facts that the Court considered in the Sale Order, and the Debtor is therefore prohibited from collaterally attacking the Sale Order by asserting the claims.

In response, the Debtor contends that it is not seeking to set aside the Sale Order or the sale that was concluded in December of 2003. On the contrary, the Debtor asserts that it is only seeking damages against the parties involved in the transaction as a result of their improper conduct, as contemplated by § 363(n) of the Bankruptcy Code. Consequently, the Debtor contends that its independent claims for fraud and negligent misrepresentation are not barred by any preclusive effect of the Sale Order.

## Discussion

Rule 56 of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that a summary judgment shall be entered if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." In determining whether a summary judgment should be entered, the record is viewed in the light most favorable to the nonmoving party. *Moecker v. Honeywell International, Inc.*, 144 F.Supp.2d 1291, 1300 (M.D.Fla.2001).

In this case, the Court has considered the record and finds that a summary judgment should be entered determining that the Sale Order precludes the Debtor from asserting the claims against the Plaintiffs that it has alleged in the State Court action.

## I. Section 363(n)

The Debtor contends that the "starting point" for the Court's analysis is § 363(n) of the Bankruptcy Code. (Doc. 25, p. 4). Section 363(n) provides as follows:

**11 U.S.C. § 363. Use sale, or lease of property**

. . . . .

(n) The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount. In addition to any recovery under the preceding sentence, the court may grant judgment for punitive damages in favor of the estate and against any such party that entered into such an agreement in willful disregard of this subsection.

11 U.S.C. § 363(n). The Debtor contends that this section allows a trustee either (1) to set aside a sale that was authorized by the Bankruptcy Court if the sale price was

controlled by an agreement among the bidders, or (2) to recover damages from the parties who had engaged in such efforts to control the bidding. (Doc. 25, p. 5).

According to the Debtor, its Third Amended Complaint "merely seeks damages" from the Plaintiffs for their alleged fraud or inequitable conduct, as contemplated by the second remedy provided to a trustee under § 363(n). (Doc. 25, pp. 4, 9). Consequently, according to the Debtor, "neither the Sale Order nor the provisions of Rule 60 prevent the Debtor from pursuing such relief." (Doc. 25, p. 9).

Rule 60 of the Federal Rules of Civil Procedure, as made applicable to bankruptcy cases by Rule 9024 of the Federal Rules of Bankruptcy Procedure, provides in part:

**Rule 60, Relief from Judgment or Order**

. . . . .

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or a party's representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken,

F.R.Civ.P. 60(b)(3).

The Debtor contends that its claims against the Plaintiffs are not barred by the one-year limitation set forth in Rule 60(b)(3). The Debtor's position in this regard is largely a response to the Plaintiffs' reliance on the decision in *In re Clinton Street Food Corp.*, 254 B.R. 523 (Bankr. S.D.N.Y.2000).

In *Clinton Street*, the Court had entered an Order approving the sale of certain of a chapter 7 debtor's assets to Maui Pineapple Co., Inc. More than four years after the Order was entered, the Chapter 7 Trustee filed an action against Maui and other parties for fraud and other alleged misconduct, on the basis that the defendants had secretly colluded to control the sale price of the debtor's assets. *In re Clinton Street Food Corp.*, 254 B.R. at 527–29.

The Court began its analysis of the Trustee's fraud claims with a discussion of the doctrine of res judicata, and the well-established rule that a "bankruptcy court order approving a sale of assets is a final order for *res judicata* purposes." *Id.* at 530–31(citations omitted).

The Court then recognized that § 363(n) of the Bankruptcy Code is a statutory exception to the rule of finality for sale orders. *Id.* at 531(citing *In re Intl. Nutronics, Inc.*, 28 F.3d 965, 968 (9th Cir. 1994)). Section 363(n) does not contain a limitations period for bringing an action to avoid a sale or to recover damages based on an allegedly collusive sale. The Court in *Clinton Street* however, previously had determined that the Trustee's initial claims under § 363(n) were untimely, because "any equitable or legal claims relating to the bid rigging under § 363(n) were barred by the one-year period of limitations established under Fed.R.Civ.P. 60(b)(3)." *In re Clinton Street*, 254 B.R. at 531.

The Court next found that the Trustee's common law fraud claims were virtually indistinguishable from the claims that it previously had asserted under § 363(n).

Although they may enjoy distinct elements, ... they are not distinct for *res judicata* purposes; all of the claims de-

pend on the bid rigging scheme and the issuance of the Sale Order, and seek damages based upon the improper procurement of the Sale Order.

*In re Clinton Street,* 254 B.R. at 531. Based on the interplay of Rule 60(b)(3) and the doctrine of res judicata, therefore, the Court ultimately concluded that the Trustee was precluded from asserting his common law claims for fraud related to the entry of the sale order. *Id.* at 531–32.

In response to the decision in *Clinton Street,* the Debtor in this case asserts that Rule 60(b)(3) does not bar its claims against the Plaintiffs, because it is "merely seeking damages" based on the difference between the sale price for the Property and its true value. (Doc. 25, p. 9). In other words, even though the Debtor contends that § 363(n) is the "starting point" to analyze its claims, it also contends that the one-year limitation set forth in Rule 60(b)(3) does not preclude its assertion of the claims. (Doc. 25).

The Court has reviewed Count X and Count XI of the Debtor's proposed Third Amended Complaint filed in the State Court action. Count X of the Third Amended Complaint is entitled "negligent misrepresentation against Bronson, C.E.K. and MBC." Count XI is entitled "fraud by Bronson." The Counts are not based on § 363(n) of the Bankruptcy Code. On the contrary, the Debtor's claims were filed in State Court, and present only state law causes of action based on fraud and negligent misrepresentation. Consequently, the Court will not evaluate the claims under § 363(n) of the Bankruptcy Code, or under Rule 60(bX3) of the Federal Rules of Civil Procedure. Instead, the Court will determine whether the claims were or could have been resolved in the Sale Order, and therefore whether the claims are barred by the doctrine of res judicata.

## II. Res judicata

■ "A bankruptcy court order approving a sale of assets is a final order for *res judicata* purposes." *In re Clinton Street,* 254 B.R. at 530.

■ Res judicata, or claim preclusion, prevents a party from suing on a claim which has been previously litigated to a final judgment by that party, and precludes the assertion by such party of any legal theory, cause of action, or defense which could have been asserted in that action. 18 Moore's Federal Practice, ¶ 31.10[1][a] (3d ed.). "Res judicata bars all grounds for recovery that could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." *In re Intl. Nutronics, Inc.,* 28 F.3d 965, 969 (9th Cir.1994)(citing *Clark v. Bear Stearns & Co.,* 966 F.2d 1318, 1320 (9th Cir.1992)).

In *In re Farmland Industries, Inc.,* 376 B.R. 718 (Bankr.W.D.Mo.2007), the Court recently addressed certain claims relating to a sale order that had been previously entered. In *Farmland,* the Court had entered an order approving the sale of certain of the debtor's assets in November of 2003. A rejected bidder (GAF) subsequently filed a complaint against the buyer and related defendants. In the complaint, GAF alleged that the defendants had conspired to prevent it from participating in the bidding process, and had also made certain misrepresentations to the Court in order to obtain approval of the sale, *In re Farmland Industries,* 376 B.R. at 721–24.

The defendants filed a motion to dismiss the complaint on the grounds that it constituted an impermissible attack on the validity and finality of the sale order. In response, GAF asserted that its complaint set forth only independent, state taw claims that did not conflict with the sale

order, and therefore should not be dismissed. *Id.* at 721.

The Court concluded that GAF's claims should be dismissed because the complaint constituted a prohibited collateral attack on the Sale Order. *Id.* at 726.

"Even though an action has an independent purpose and contemplates some other relief, *it is a collateral attack if it must in some fashion overrule a previous judgment.*" (Footnote omitted). *In this case, not only would a plaintiff's judgment on the complaint overrule key findings in the Sale Orders, but the Court is hard pressed to find that the complaint has an independent purpose or contemplates some other relief. The fact that GAF does not seek to undo the sale with regard to title is not dispositive: it is sufficient that the Plaintiff is seeking to undo the economics of the sale by seeking damages against [the buyer],* placing itself in [the buyer's] economic position as the successful buyer and reseller of the Coffeyville Assets. GAF is bound by the Sale Orders, which became final more than three years ago, and those orders are an insuperable barrier to GAF's complaint.

The orders are binding on GAF under two principles-collateral estoppel and the *in rem* protections conferred on [the buyer] under 11 U.S.C. § 363(m).

*Id.* at 726(Emphasis supplied).

In finding that the complaint was barred, the Court first found that granting the relief requested by GAF would effectively overrule certain critical findings contained in the sale order. Specifically, for example, the sale order included a determination that the sale had been negotiated "at arm's length, without collusion and in good faith within the meaning of § 363(m) of the Bankruptcy Code." *Id.* at 727. According to the Court, however, the "very gist" of GAF's complaint was that the sale

was improper and the result of a conspiracy, allegations that clearly conflict with the Court's findings of good faith. *Id.*

Relief could not be granted in GAF's favor without disturbing key findings in the sale order. Consequently, according to the Court, GAF's complaint constituted an improper collateral attack on a final order of the Court.

Second, the Court found that GAF was precluded from asserting its claims by § 363(m) of the Bankruptcy Code. The sale order in *Farmland* had expressly determined that the debtor and the buyer "are entitled to the protections of section 363(m)." *Id.* Generally, § 363(m) provides that the reversal of a sale under § 363 does not affect the validity of the sale as to an entity that purchased the property in good faith. 11 U.S.C. § 363(m). The section protects good faith purchasers from attacks on the propriety of their purchase. *In re Farmland,* 376 B.R. at 729.

Since the sale order in *Farmland* expressly provided that the buyer was entitled to the protections set forth in § 363(m), the Court found that GAF's complaint could not circumvent those protections by challenging the propriety of the sale. *Id.*

GAF appealed the Bankruptcy Court's Order dismissing its claims, and on December 5, 2007, the Bankruptcy Appellate Panel for the Eighth Circuit determined that the Bankruptcy Court lacked subject matter jurisdiction over GAF's complaint, because the complaint involved a "dispute between non-debtor third parties grounded in state tort law." *In re Farmland Industries, Inc.,* 2007 WL 4245673, at *2 (8th Cir. BAP 2007). Consequently, the Bankruptcy Appellate Panel did not reach the substantive issues that had been addressed by the Bankruptcy Court.

### III. Application

 In applying the principles discussed above, the Court begins with the premise that sale orders in bankruptcy cases are accorded a high level of finality.

Section 363(m) protects the reasonable expectations of good faith third-party purchasers by preventing the overturning of a completed sale, absent a stay, and it safeguards the finality of the bankruptcy sale. *In re Paulson,* 276 F.3d at 392. Section 363(m) further shields third parties who rely upon the bankruptcy court's order from endless litigation. *In re Sax,* 796 F.2d 994, 998 (7th Cir.1986). By providing reliability and finality, section 363(m) enhances the value of the debtor's assets sold in bankruptcy. *In re Stadium Mgmt. Corp.,* 895 F.2d 845, 847 (1st Cir.1990). Section 363(m)'s finality also strikes a balance between the creditor's interest and the purchaser's interest by producing value for the estate and preventing any modification or reversal of the bankruptcy court's authorization of the sale from affecting the validity of the sale. *In re Trism, Inc.,* 328 F.3d 1003, 1006 (8th Cir.2003). Because of these policy considerations underlying the need for finality, collateral attacks on sale orders should generally be prohibited.

 In this case, the Sale Order expressly provided that the sale to C.E.K., Inc. was in the best interest of the bankruptcy estate, that the terms of the sale were fair and reasonable, that C.E.K., Inc. had negotiated the transaction and was purchasing the assets in good faith within the meaning of § 363(m), and that the sale was afforded all of the protections provided by § 363(m) of the Bankruptcy Code. (Doc. 200, pp. 2–4).

The Sale Order was entered on December 19, 2003. No entity filed a motion for rehearing or appeal of the Sale Order, or otherwise moved to have the Sale Order set aside. (Adv.Doc.16, p. 8).

The sale closed on December 30, 2003, and the sum of $1,650,000.00 was paid for the Property.

More than three years later, the Debtor filed a Third Amended Complaint in the State Court action in Pinellas County, Florida. In the Third Amended Complaint, the Debtor alleges that the Plaintiffs had obtained a higher offer for the Property from a third party before the Sale Order was entered, but had concealed the higher offer while the sale to CEK, Inc. was being considered by the Court.

Specifically, the Debtor alleges that the Debtor and C.E.K., Inc. had entered a Purchase Contract on October 30, 2003; that the Purchase Contract was presented to the Bankruptcy Court for approval on November 12, 2003; that a third party offered to pay the Plaintiffs a higher price for the Property on November 25, 2003; that the Bankruptcy Court conducted a hearing to consider approval of the Purchase Contract between the Debtor and C.E.K., Inc. on December 15, 2003; that the Plaintiffs did not disclose the existence of the higher offer to the Court; and that the Sale Order was entered on December 19, 2003.

In the Third Amended Complaint, therefore, the Debtor seeks an award of damages from the Plaintiffs in the amount of $845,000.00, which represents the difference between the purchase price received by the Debtor, and the amount of the higher offer made by the third party. (Adv. Doc. 7, Exhibit C, Counts X, XI).

Under these circumstances, the Court finds that Debtor's claims against the Plaintiffs, as set forth in the Third Amended Complaint, are precluded as impermissible collateral attacks on the Sale Order entered by this Court.

First, as stated in *Farmland,* even though the Debtor is not explicitly seeking to set aside the sale, it is attempting to unravel the economic effect of the sale by seeking damages that correspond to the higher offer made for the Property in 2003. *In re Farmland Industries,* 376 B.R. at 726. The claims were raised by the Debtor more than three years after the sale closed. It appears that § 363(m) was specifically designed to protect the economic integrity of court-approved sales from such belated attacks. *In re Trism,* 328 F.3d at 1006.

Second, the relief requested by the Debtor cannot be granted without effectively overruling key findings in the Sale Order, such as express determinations that C.E.K., Inc. acted in good faith in connection with its purchase of the Property. *In re Farmland Industries,* 376 B.R. at 727. To challenge a Sale Order, a party may pursue the remedies provided by § 363 of the Bankruptcy Code or Rule 60(b) of the Federal Rules of Civil Procedure. A party may not challenge a Sale Order, however, by seeking damages based on allegations that clearly conflict with the Court's prior findings regarding the transaction.

Finally, the Debtor relies on *In re American Paper Mills of Vermont, Inc.,* 322 B.R. 84 (Bankr.D.Vt.2004), *motion for rehearing denied,* 2004 WL 1960141, for the proposition that its claims are not barred by the one-year limitations period generally applied to actions to set aside a sale under § 363(n) of the Bankruptcy Code. In this case, however, the Court is not barring the Debtor's claims based upon their timeliness or untimeliness. On the contrary, the Court finds that the Debtor's claims for fraud and negligent misrepresentation are barred by the doctrine of res judicata, because they constitute an impermissible collateral attack on a final Order approving the sale of the Debtor's property.

## Conclusion

The issue in this case is whether the Sale Order entered by the Court on December 19, 2003, precludes the Debtor from asserting certain claims against the Plaintiffs for fraud and negligent misrepresentation that allegedly occurred in connection with the Sale.

The claims are impermissible collateral attacks on the Sale Order, and the Debtor is barred from asserting the claims in the State Court action. By asserting the claims, for example, the Debtor is attempting to unravel the economic integrity of the sale, a result which § 363(m) of the Bankruptcy Code is intended to prevent Further, the relief requested by the Debtor cannot be granted without effectively overruling certain key findings in the Sale Order. The findings, which relate to the buyer's good faith and the reasonableness of the sale, constitute significant components of the Order that were never appealed and are final determinations of the Court.

Accordingly:

**IT IS ORDERED** that:

1. The Motion for Summary Judgment filed by the Plaintiffs, Michael L. Bronson, CEK, Inc., and MBC, LLC, is granted.

2. The claims asserted by the Debtor, CHC Industries, Inc., in Count X and Count XI of the Third Amended Complaint filed in the action pending in the Circuit Court of the Sixth Judicial Circuit for Pinellas County, Florida, styled *CHC Industries, Inc. v. Realtec Group, Inc., et al.,* Case No. 05–008138, are barred by the Order Granting Debtor's Motion for Authority to Sell Real and Personal Property Free and Clear of Liens to C.E.K., Inc., entered by this Court on December 19, 2003.

3. A separate Summary Final Judgment will be entered consistent with this Order.